**In re Donald Lee RODROCK and Janet Carol Rodrock, Debtors/Plaintiffs,**

**v.**

**SECURITY INDUSTRIAL BANK, Defendant.**

**and**

**In re Pamela Sue KNEZEL, Debtor/Plaintiff,**

**v.**

**SECURITY INDUSTRIAL BANK, Defendant.**

**Bankruptcy Nos. 80 M 0014, 80 M 0224.**

United States Bankruptcy Court, D. Colorado.

April 25, 1980.

Edward I. Cohen, Denver, Colo., for debtors-plaintiffs.

Michael E. Katch, Denver, Colo., for defendant.

Richard L. Levine, Washington, D. C., for intervenor.

## MEMORANDUM OPINION

JOHN P. MOORE, Bankruptcy Judge.

These two cases have been combined for disposition because they present an identical question. Both arise from complaints filed pursuant to 11 U.S.C. § 522(f) to void liens created prior to November 6, 1978 by nonpossessory, nonpurchase-money security interests in personal property of the Plaintiffs who are Chapter 13 debtors. A defense has been interposed which questions the constitutionality of the statute if applied to the Defendant. It is asserted that the avoidance of the Defendant's liens would result in the deprivation of a valuable and substantive property right without due process of law as mandated by the Fifth Amendment.[1]

In both cases, the subject security interests were created prior to November 6, 1978. If the Plaintiffs succeed, these interests would be of no value, and the Defendant would be dealt with as a creditor holding an unsecured claim. Owing to the treatment of unsecured claims provided in both plans, the Defendant would receive one dollar in each case.[2]

---

1. After notice to the Attorney General of the constitutional issue, the Government has been permitted to intervene only as to the question of law presented.

2. The evidence taken by the Court at the hearings on confirmation held concurrently with hearings on the subject complaints includes a stipulation between the Plaintiffs and the Defendant of the value of the property subject to the liens in question. In the *Rodrock* case, it

The statute with which we deal is part of the overall provision creating exemption rights in debtors' property. The remedy provided by § 522(f) is the avoidance of liens which encumber exemptions in specific property. In pertinent part, it reads:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

\* \* \* \* \* \*

The issue raised by the Defendant is that application of this subsection to secured loans made and perfected prior to the date of adoption of the Bankruptcy Reform Act of 1978, November 6, 1978, constitutes a deprivation of the Defendant's security interest without due process of law. In support, the Defendant relies almost exclusively upon *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).

Speaking for the opposition with consent of Plaintiffs' counsel, the Government argues that *Radford* has been "enervated" by subsequent decisions, and hence is no longer precedent for the case at hand. In addition, it is contended that acting within the bankruptcy power created by Article 1, section 8(4) of the Constitution, Congress has the power to impair vested rights in property.

The Government also postulates that only the deprivation of *substantial* rights is subject to invalidity on constitutional grounds, and it is contended that the lien rights in question here are not substantial. In my judgment, while these contentions are initially appealing, a careful analysis proves them to be without substance.

Is it true that *Radford, supra*, has been abandoned or so eroded that it is without vitality? In order to answer that question, one must first understand the principle for which *Radford* stands. In that case, the Supreme Court had before it the question of the constitutionality of the Frazier-Lemke Act of 1933 which amended § 75 of the Bankruptcy Act. Enactment of Frazier-Lemke was prompted by the Great Depression, and it was intended to bring relief to beleaguered farmers by providing them with a means for saving the family farm from foreclosure. As originally passed, Frazier-Lemke would have permitted a debtor to obtain a five-year stay of state foreclosure proceedings from a court of bankruptcy. Meanwhile, the debtor would retain possession of his property under court supervision, subject to the payment of a reasonable rent. At the end of the period of that stay, the debtor would pay into the court an appraised price (subject to judicial determination) and thereafter obtain the property free and clear of the original indebtedness. Although the creditor would receive the benefit of the rents and the appraised price, the creditor would lose any of the rights and remedies that had been available to him under the terms of his mortgage.

Pointing out that Frazier-Lemke was the first instance in which any legislative body attempted to compel a mortgagee to relinquish a lien without full payment of the underlying debt, and observing such a statute was foreign to any bankruptcy law precedent, the Court stated:

was agreed that collateral consisting of 15 items of household furnishings, including a color television set and a sewing machine with table, are worth $580.00. In the *Knezel* case, it was stipulated that the Debtor's furniture, kitchenware, a sewing machine, and a movie projector are worth $540.00. It is not stipulat-

ed whether the values represent liquidation value, market value, or replacement value, but as it was agreed between the parties, the basis of the valuation was of no consequence to the Court. In each case, the collateral for the subject loans represents every household item owned by the Debtors.

The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the states, it is not prohibited from impairing the obligations of contracts. (Cita.) But the effect of the act here complained of is not the discharge of Radford's personal obligation. It is the taking of *substantive rights in specific property acquired by the bank prior to the act.* (emphasis added) (295 U.S. at 589–590, 55 S.Ct. at 863)

The Court continued that the secured creditor was entitled to certain rights in the specific property held as collateral, including the right to retain a lien until the indebtedness is paid in full. Additionally, under the law of the state in which the action arose, secured creditors were also deprived of other incidental mortgage rights by Frazier-Lemke.[3] The Court then concluded:

> The province of the Court is limited to deciding whether the Frazier-Lemke Act (Cita.) as applied has taken from the bank without compensation, and given to Radford, rights in specific property which are of substantial value. * * * As we conclude that the act as applied has done so, we must hold it void; for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken even for wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public. (295 U.S. at 601–602, 55 S.Ct. at 869)

In my judgment then, *Radford* stands for the proposition that a substantive right in specific property cannot be substantially impaired by legislation enacted after the right has been created without doing violence to the property owner's right to due process. In this context, it is clear that a secured creditor's rights are substantial.

The Government has sought to distinguish *Radford* on the grounds that the creditor's right therein was a right in real property and therefore more substantial than the rights of a creditor whose only security is in personal property. Yet, as much as the Government would like it, such a distinction does not exist. Any lien is a matter of property and not a mere matter of procedure. *Sager v. Burgess*, 350 F.Supp. 1310 (D.Pa.1972); aff'd 411 U.S. 941, 93 S.Ct. 1923, 36 L.Ed.2d 406 (1973); *In re Pennsylvania Central Brewing Co.*, 114 F.2d 1010 (3rd Cir. 1940); *Britton v. Western Iowa Co.*, 9 F.2d 488 (8th Cir. 1925). Moreover, for constitutional purposes, it makes no difference whether liens are on personal property or real property. Cf. *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960); *Ginsberg v. Lindel*, 107 F.2d 721 (8th Cir. 1939). Accordingly, the case must turn on whether *Radford* has been eroded as the Government insists.

Although it is not contended otherwise, it should still be noted that *Radford* has not been directly overruled. Thus, one can reach the Government's position only through analogy.[4] After consideration, I find that the cases upon which the Government relies do no harm at all to the *Radford* principle.

In *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), the Court

---

**3.** These were the right to realize upon the security at a judicial sale; the right to determine, subject to the discretion of a court, when the sale would be held; the right to protect the creditor's interest by bidding at the sale; and the right to control the property during the period of the default.

**4.** It is also noteworthy that the cases which the Government argues enervate *Radford* are characterized by the Defendant as "refinements".

had occasion to uphold a post-*Radford* amendment to the Frazier-Lemke Act. In the redraft of the Act, Congress preserved three of the rights enumerated by the Court in *Radford* as essential to the interest of the secured creditor. In reaching its conclusion that the Frazier-Lemke Act did not conflict with the Fifth Amendment, the Court observed:

> The question * * * is not whether the Act does more than modify remedial rights. It is whether the legislation modifies the secured creditor's rights, remedial or substantive, to such an extent as to deny the due process of law guaranteed by the Fifth Amendment. (300 U.S. at 470, 57 S.Ct. at 565)

While the Government argues that *Vinton Branch* represents a departure from *Radford*, I find it quite to the contrary. The fact remains that in its redraft of Frazier-Lemke, Congress reserved to secured creditors the right to retain liens until full satisfaction of the underlying obligation. In addition, the new version also returned to the creditors the right to satisfaction of the debt from the secured property. These are perhaps the quintessential rights of any secured creditor, and to say, therefore, that *Vinton Branch* represents an erosion of *Radford* is to disregard the significance of the rights available to secured creditors following the Frazier-Lemke amendment.

It is urged that *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed.2d 340 (1937), represents a "step in the flight away from *Radford*." In *Kuehner*, the Court upheld the provision of § 77B(b) of the Bankruptcy Act then in force which limited a landlord's indemnification for loss of future rents. While the Government argues that the case illustrates that a creditor's right may be impinged, it is manifestly clear that the right affected was not a substantive right in specific property, but a contractual right which *can* be affected by exercise of the bankruptcy power. Indeed, the Court said:

> [T]here is, as respects the exertion of the bankruptcy power, a significant difference between a property interest and a

contract since the Constitution does not forbid impairment of the obligation of the latter * * *. While * * * the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets. (299 U.S. at 451–452, 57 S.Ct. at 301)

In *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), the Court did refine its *Radford* rule by allowing a debtor to redeem mortgaged property at an appraised value instead of by full payment of the indebtedness. This departure, such as it may be, still leaves intact the rule that liens may not be entirely destroyed. The Court stated:

> Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property. * * * There is no constitutional claim of the creditor to more than that. (311 U.S. at 278, 61 S.Ct. at 199–200)

From my reading of these cases, I have concluded that although *Radford* may be old, it is far from dead. Indeed, it stands as a venerable and vigorous sentinel of due process rights. Since the *Radford* principle is so clearly grounded upon the due process clause of the Fifth Amendment, other authorities relied upon by the Government dealing strictly with physical expropriation or the compensated taking of property are simply inapposite and not worthy of further discussion.

▆▆ As I view this case, the constitutional difficulty § 522(f) presents is the means chosen by Congress for achieving a laudable purpose. It seems evident that legislation which effects the total deprivation of a substantive right in specific property antedating the statute is unreasonable. Although it appears Congress had a substantial motivation for the enactment of

§ 522(f)[5], and while the purported goal seems proper in light of the "fresh start" objectives of the bankruptcy law, I firmly believe that *Radford* teaches us that such an objective cannot be achieved at the expense of creditors whose rights in specific property have attached prior to the enactment of the law.[6]

 Though the intrinsic value of each item of collateral may be low, it cannot be overlooked that those items are still valuable. I cannot believe that the retrospective destruction of those rights in such property can be constitutionally sanctioned simply because they have little intrinsic worth. It is the right to hold that property which is protected by the Fifth Amendment, and the exercise of that right is not a function of its value in dollars.

Two remaining issues demand brief discussion in order to afford complete exposition of this case. First, in order to remove any lingering doubt which may be occasioned by my treatment of this matter, I am cognizant of the fact that any Court should be wary of finding statutes in conflict with the Constitution. If there is a ground upon which an enactment can be sustained so that a constitutional issue can be avoided, that is the ground upon which a Court should rest. *Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); *Wright v. Vinton Branch of Mtn. Trust Bank, supra.* Yet, in this case, as hard as I looked, I could find no basis upon which application of § 522(f) to security agreements made and perfected prior to November 6, 1978 could be sustained.[7]

 Second, it has been suggested that since there is nothing within the parameters of the Bankruptcy Reform Act of 1978 which specifically makes § 522(f) applicable to agreements entered into before November 6, 1978, the Court should find the statute was intended to work prospectively only. See: *Edgar v. Fred Jones Lincoln Mercury*, 524 F.2d 162 (10th Cir. 1975). That suggestion does not comport with the overall scheme of the Act as a whole, however. I believe it clear that Congress intended retrospective application of the Act, for it stated:

> A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted. § 403, Pub.L. 95–598, Title IV, Nov. 6, 1978, 92 Stat. 2683.

Thus, only cases commenced prior to the effective date of the Bankruptcy Reform Act of 1978 are to be determined according

---

5. Legislative history indicates:

Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors ignorant of the creditor's true intentions, are coerced into payments they simply cannot afford to make. H.R.Rep.No.95–595 at p. 127, U.S.Code Cong. & Admin.News 1978 at pp. 5787, 6088.

6. It is not without reason to suspect that Congress recognized the verity of this statement in its adoption of 11 U.S.C. § 1325(a)(5)(B). That subsection of Chapter 13 allows a debtor to retain possession of secured property against the will of the creditor, but as a price for that privilege the law allows the secured creditor to retain his lien and be paid the full value of the collateral. In this instance, the statute provides both a response to the debtor's needs and a reasonable means for its achievement.

7. Whether the same results would apply to agreements made after that date is not decided here.

to the former Bankruptcy Act. In other respects, for our purposes here, the former Bankruptcy Act has been repealed. § 401, Title IV, Pub.L. 95–598.

It would thus seem apparent that if, in cases filed after October 1, 1979, Congress did not intend the substantive provisions of the Bankruptcy Reform Act to apply to obligations created prior to November 6, 1978, there would be no bankruptcy laws in effect to deal with those debts. Since it cannot be seriously suggested that such was the legislative intent, one must conclude that retrospective application was clearly intended.

Having determined that the application of 11 U.S.C. § 522(f) to the Defendant in this case would be to deny it substantive due process, the final resolution of this case is clear. The complaints will be dismissed with an appropriate order.