**In re Karl Phillip WOODS and Christana J. Woods, his wife, Debtors.**

**Karl Phillip WOODS and Christana J. Woods, His Wife, Plaintiffs,**

**v.**

**MICHIGAN NATIONAL BANK–VALLEY, a National Banking Association, Defendant.**

**Bankruptcy No. 80–00305.**
**Adv. No. 80–0138.**

United States Bankruptcy Court, E. D. Michigan, N. D.

Feb. 26, 1981.

Thomas C. Stipes, Flint, Mich., for plaintiff.

Kenneth W. Kable, Saginaw, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

HARVEY D. WALKER, Bankruptcy Judge.

The Plaintiffs in this matter, Karl Phillip and Christana J. Woods (hereinafter "Debtors") filed a Complaint on November 7, 1980 seeking to avoid a lien on household goods held by the Defendant, Michigan National Bank Valley (hereinafter "Bank") pursuant to 11 U.S.C. § 522(f)(2)(A) of the Bankruptcy Code (hereinafter "522(f)").

A hearing was held on November 25, 1980, at which time the Court heard argument presented by both parties and reserved decision. The Court having heard the arguments of counsel and having reviewed the briefs filed by counsel will proceed to decide the question of law presented, namely, whether Section 522(f) can be applied retroactively without violating the due process clause of the U. S. Constitution.

The following facts are not in dispute. This case was commenced on May 29, 1980, when the Debtors filed a Voluntary Petition for Relief under Chapter 7 of Title 11 of the United States Code. Previously, on or about March 5, 1979, the Debtors borrowed $5,244.84 from the Bank. As security for such debt, the Bank insisted on and the Debtors executed, a waiver of exemption of certain property and a security agreement granting to the Bank a security interest in and to the Debtors' personal property which consisted of certain household goods. The promissory note and security agreement were entered into and perfected prior to the effective date of the Bankruptcy Reform Act, which is October 1, 1979. Finally, the sum borrowed from

the Bank did not represent any part of the purchase money of any of the goods covered by the security agreement which the Debtors executed and all of the goods so covered remain in the possession of the Debtors.

The Debtors maintain that the Bank's lien on such household and personal goods impairs exemptions to which the Debtors would be entitled under § 522(f). The Bank, however, claims that the voiding of a security interest obtained and perfected prior to the effective date of the Bankruptcy Reform Act would serve to deprive the Bank of a property interest without just compensation, and is therefore unconstitutional.

The sole issue presented is whether § 522(f) violates the Fourteenth Amendment of the United States Constitution when applied to nonpossessory, nonpurchase-money security interests perfected before the effective date of the Code. In essence, the question is whether § 522(f) of the Code is to be accorded retroactive effect. Therefore, the constitutional challenge to § 522(f) in this case is limited to the extent that a retroactive application of that section would constitute an unconstitutional taking of a vested property right. The constitutionality of the statute itself is not under attack; only its application to liens created prior to the effective date of the new Code.

The Fifth Amendment provides that: "No person .... shall .... be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation." Upon a review and consideration of the cases and statutes cited by the parties, and the conducting of its own research, this Court holds that § 522(f) violates the due process clause when retroactively applied to security interests perfected before the effective date of the Code.

The issue presented by this case has been recently decided by a number of courts in various jurisdictions, but the results are very much in conflict. Some courts have held that the retroactive application of § 522(f) to liens created in exempt personal property prior to the enactment date of the Code is violative of the Constitution. *In Re Hoops*, 3 B.R. 635, 6 BCD 273 (Bkrtcy., D.Colo.1980); *In Re Malpeli*, 7 B.R. 508 (Bkrtcy., N.D.Ill.1980). Taking the opposite stand are those cases which hold that 522(f) is to have complete retroactive effect. *In Re Manning*, 11 B.R. 1, 3 BLR ¶ 67,714 (M.D.Fla.1980); *Centran Bank of Akron v. Ambrose*, 4 B.R. 395 (Bkrtcy., N.D.Ohio 1980).

There has also been a divergence of views expressed with respect to the situation at bar where the nonpossessory, nonpurchase-money security interest in exempt personal property was created during the interim period, that is, between the date the Code was enacted and the time it became effective. In *In Re Steinart*, 4 B.R. 354 (Bkrtcy, W.D.La.1980), it was held that creditors are on notice of a change in the bankruptcy law during the interim period, and consequently, the lien avoidance provision is to have effect during this time period. *In Re Lucero*, 4 B.R. 659, 6 BCD 489 (Bkrtcy., D.Colo. 1980) holds that Section 522(f) cannot be used to avoid a lien created during the interim period. There is also at least one court which has held that the constitutional question with respect to the retroactive application of § 522(f) is one which should be addressed to the appellate courts and found that the lien avoidance provision is constitutional unless an appellate court should hold otherwise. *In the Matter of Baker*, 5 B.R. 397 (Bkrtcy., W.D.Mo.1980).

An examination of § 522(f) of the Code indicates that it inextricably intertwined with the concept of giving the debtor a fresh start. In its entirety the Section reads as follows:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

The Debtors claim that Congress intended that this Section be applied retroactively and that Congressional intent should be controlling. If the Court could conclude that § 522(f) should be construed to avoid retroactive application, the constitutional problem might not arise.

Looking to the language of 522(f), the Court is not convinced that there is a requirement of retroactive application; nor does 522(f)'s express language compel such a construction. The construction of a preference for prospectivity may obviously be overridden by a contrary legislative intent. Title I of Pub L. 95–598 was effective October 1, 1979 (§ 402). The savings provisions (§ 403) make it clear that the provisions of the new Code were to govern in all proceedings initiated on and after that date without reference to when the creditors' claims arose. Proceedings initiated before that date were to be governed in all substantive aspects by the Bankruptcy Act. In other words, the date of the filing of the Petition controls which law applies. A contrary result was not intended by Congress. Furthermore, bankruptcy statutes have traditionally operated retroactively in the sense that they apply to secured claims and creditors' interests which precede the date of their enactment. See *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); *Claridge Apartments Co. v. United States*, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139 (1944); *Campbell v. Alleghany Corp.*, 75 F.2d 947 (4th Cir. 1935). The repeal of the Bankruptcy Act combined with the absence of retroactive application could conceivably result in certain creditors of a debtor under the Code having interests not subject to the bankruptcy statutes. Therefore, the Court concludes that although § 522(f) could apply to claims secured prior to the enactment and date the Code became effective, constitutional constraints may limit its application.

Turning now to the issue regarding the constitutionality of retroactive application, it is the opinion of this Court that the case of *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) is dispositive of the constitutional question raised.

In *Radford*, the Court found that the Frazier-Lemke Act of 1934 was unconstitutional because it was inconsistent with the Fifth Amendment. The Frazier-Lemke Act was emergency legislation initiated by the great depression and was designed to provide relief for insolvent farmers by preventing foreclosures by staying such proceedings. It permitted an insolvent farmer to remain in possession of the mortgaged property for a five year period while paying a fair annual rental which would be divided among secured and unsecured creditors. At the end of the five year period, the mortgage could be extinguished by the payment of the appraised price at the beginning of or at the end of such period at the option of the mortgagee. The Frazier-Lemke Act specifically provided that it was to have retroactive effect.

In holding that the Frazier-Lemke Act was unconstitutional, the United States Supreme Court stated the following:

"The province to the Court is limited to deciding whether the Frazier-Lemke as applied has taken from the bank without compensation, and given to Radford rights in specific property which are of substantial value. As we conclude that the Act as applied has done so, we must hold it void. For the Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken and for even a wholly public

use without compensation. If the public interest requires, and permits, taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation the burden of the relief afforded in the public interest may be borne by the public." (Citations omitted.) *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. at 601–602, 55 S.Ct. at 868–869.

It is true, that subsequently in *Wright*, *supra*, the Supreme Court sustained the amended Frazier-Lemke Act, which affected the rights of mortgagees but not as dramatically. Wright did not overrule *Radford* but rather limited and clarified its holding. Furthermore, it is the opinion of this Court that *Radford's* continued viability in determining the proper balance to be struck between the impairment of pre-existing security interests and the bankruptcy power is not as impressive as its clear holding that the bankruptcy power is subject to the constraints of the Fifth Amendment. This is especially so in the present case because § 522(f) does not merely affect the secured claim of the bank but provides for their complete extinction.

Although the Debtors emphasize that a denial of retroactive application of § 522(f) would frustrate the concept of a fresh start, this Court is compelled to follow the clear mandate provided in *Radford*. In addition, this Court would follow the views expressed in *Rodrock v. Security Industrial Bank*, 3 B.R. 629 (Bkrtcy., Colo. 1980), stated as follows:

"[A]lthough *Radford* may be old, it is far from dead. Indeed, it stands as a venerable and vigorous sentinel of due process rights.... [T]he constitutional difficulty 522(f) presents is the means chosen by Congress for achieving a laudable purpose. It seems evident that legislation which effects the total deprivation of a substantive right in specific property antedating the statute is unreasonable." *In Re Rodrock*, 3 B.R. at 633.

The lien held by the Bank in the instant case arose and was perfected during the "interim period; i. e., November 6, 1978, through October 1, 1979. The Court is of the opinion that the retroactive application of § 522(f) to this lien would be violative of the due process clause of the Fifth Amendment.

Although the lien is a consensual nonpossessory nonpurchase money security interest in household goods, this Court adopts by analogy the rationale set forth in *In Re Lucero, supra*. The Court therein was presented with the question of whether a judicial lien which arose during the interim period could be set aside pursuant to § 522(f)(1) of the Code. The Court held that it could not, stating:

"The difference between the facts in the case at issue and those in *Rodrock*, is that the lien here arose on February 7, 1979, after the date the Code was enacted (November 6, 1978), but before § 522(f) became effective on October 1, 1979, whereas the liens considered in *Rodrock* arose before the date of enactment.

This factual distinction does not change the law to be applied. The rule of *Radford, supra*, remains binding and dispositive of the issues. Here, the Defendant acquired substantive rights and specific property prior to the date the new law became effective. Legislation which effects the total deprivation of such rights is unreasonable and has never been countenanced by the Supreme Court." (Citations omitted.) *In Re Lucero*, 5 B.R. at 661.

It is not lightly that this Court concludes that § 522(f), as applied to security interests created prior to October 1, 1979, violates due process. The power of Congress to establish "uniform laws on the subject of bankruptcies throughout the United States" is far-reaching and ever-increasing. As was stated in *Wright v. Union Central Life Insurance Co.*, 304 U.S. 502, 513, 58 S.Ct. 1025, 1031, 82 L.Ed. 1490 (1938):

"The subject of bankruptcies is incapable of final definition. The concept changes. It has been recognized that it is not limit-

ed to the connotation in England or the States, at the time of the formulation of the Constitution."

In contrast with the above-stated principle, *Radford* holds that the bankruptcy power is subject to the limitations of due process. As of this date, due process had not yet allowed the retroactive extinguishment of valid liens absent the most compelling circumstances.

Therefore, in light of the reasons set forth herein, it is the opinion of this Court that Section 522(f) of the Code cannot be constitutionally applied to liens specified in such section which arose prior to the effective date of the Code. For this Court to hold the contrary would be a denial of substantive due process which is guaranteed by the Fifth Amendment of the United States Constitution.

Accordingly, the Debtors Complaint to Avoid Lien is hereby dismissed.

IT IS SO ORDERED.