In re Richard D. HAMMER, Florence L. Hammer, Debtors.

Richard D. HAMMER and Florence L. Hammer, Plaintiffs,

v.

BENEFICIAL FINANCE CO., Defendant.

Bankruptcy No. 80–04188.
Adv. No. 80–0336.

United States Bankruptcy Court,
N. D. Iowa, W. D.

March 2, 1981.

Philip Dandos, Sioux City, Iowa, Mohummed Sadden, South Sioux City, Iowa, for plaintiffs.

Donald H. Molstad, Sioux City, Iowa, for defendant.

*Findings of Fact, Conclusions of Law, and ORDERS, with Memorandum*

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court involves a Complaint to Avoid the Fixing of a Lien under Section 522(f)(2) of the Bankruptcy Reform Act of 1978. Attorneys Phillip S. Dandos and Mohummed Sadden represented the Plaintiffs in this adversary proceeding, and Attorney Donald H. Molstad represented the Defendant. The matter was submitted on stipulation as to the facts, and briefs regarding the legal issue were submitted by both parties. The Court, having examined the record and being fully advised, now makes the following Findings of Fact, Conclusions of Law and Orders:

### FINDINGS OF FACT

1. On or about June 21, 1978, Richard D. Hammer and Florence L. Hammer obtained a loan from Beneficial Finance Company (hereinafter "Beneficial"), executed and delivered to Beneficial a promissory note and, as security for said note, a security agreement granting to Beneficial a security interest in the following described property:

    (a) 1 bookcase

    (b) 1 chair

    (c) 2 couches

    (d) 2 design clock radios

    (e) 1 GE tape player

    (f) 5 piece table and chair

    (g) 6 kitchen chairs

    (h) 1 Frigidaire refrigerator

(i) 1 Singer sewing machine

(j) 1 Frigidaire range

(k) 1 Sylvania television

(*l*) 1 Eureka vacuum

(m) 1 Frigidaire washing machine

(n) 1 Frigidaire dryer

(o) 3 piece bedroom set

2. Beneficial properly perfected said security agreement in the aforementioned household furnishings, goods, and appliances.

3. Beneficial's lien on said property was a nonpossessory, nonpurchase-money security interest in the aforementioned household items which were held primarily for the personal, family, and household use of the Debtors, Richard and Florence Hammer. Said items are exempt to the debtors in these proceedings.

4. On June 25, 1980, said Debtors filed a voluntary petition in Bankruptcy under Chapter 7 of Title 11 of the United States Code.

5. Debtors filed a Complaint to Avoid the Fixing of a Lien on the aforementioned property of the Debtors under 11 U.S.C. § 522(f)(2), alleging that Beneficial's lien on said household property impairs an exemption to which the Debtors are entitled pursuant to 11 U.S.C. § 522(b).

6. In its Answer, Beneficial raised an affirmative defense to Plaintiffs' Complaint, alleging that § 522(f)(2) is unconstitutional as applied to a security interest created prior to the enactment of the Bankruptcy Reform Act on November 6, 1978.

7. The value of Debtors' interests in any particular item of the aforementioned household furnishings, goods, and appliances does not exceed the maximum amount allowable by § 522(d). Therefore, the value of said property is not in issue.

8. Plaintiffs/Debtors and Defendant Beneficial have stipulated as to the facts.

## CONCLUSIONS OF LAW

Section 522(f)(2) of the Bankruptcy Reform Act of 1978 is unconstitutional as applied to security interests created prior to the enactment of the Act on November 6, 1978.

2. Plaintiffs' Complaint to Avoid the Fixing of a Lien under 11 U.S.C. § 522(f)(2) should be dismissed because the retroactive application of § 522(f)(2) to avoid Defendant's preenactment lien would constitute a taking of Defendant's secured property rights, effecting a deprivation of property without due process of law in violation of the Fifth Amendment to the United States Constitution.

## ORDERS

IT IS THEREFORE ORDERED that 11 U.S.C. § 522(f)(2) cannot, consistent with the Due Process Clause of the Fifth Amendment to the United States Constitution, be applied retroactively to avoid the fixing of a nonpossessory, nonpurchase-money security interest in the Debtors' exempt household goods which was created prior to the enactment date of the Bankruptcy Reform Act of 1978, *i. e.*, November 6, 1978.

IT IS FURTHER ORDERED that Plaintiffs' Complaint to Avoid the Fixing of a Lien under 11 U.S.C. § 522(f)(2) is denied and dismissed.

## MEMORANDUM

### Division I

The facts of this case have been stipulated. Prior to the enactment of the Bankruptcy Reform Act of 1978 (hereinafter the "Code"), Richard D. and Florence L. Hammer (hereinafter the "Debtors") borrowed money from Beneficial Finance Company (hereinafter "Beneficial") and voluntarily executed a security agreement giving a security interest in certain of their household goods, furnishings, and appliances to Beneficial. Beneficial properly perfected said security interest pursuant to Iowa law. Two years later, Debtors commenced this case by filing a voluntary petition under Chapter 7 of the Code and, pursuant to § 522(f)(2), sought to avoid Beneficial's lien on Debtors' household property.

The primary issue presented to the Court is the constitutionality of the retroactive application of § 522(f)(2) to avoid nonpossessory, nonpurchase-money security interests created prior to November 6, 1978, the enactment date of the Code. Beneficial contends that § 522(f)(2) should not be retroactively applied because Congress did not explicitly intend that its avoidance provisions be applied to security interests created prior to the Code, and, further, that such retroactive application would constitute a deprivation of private property in violation of the due process clause of the Fifth Amendment to the United States Constitution.

For the reasons stated in Division II below, this Court holds that Congress manifestly intended that § 522(f)(2) retroactively apply to security interests created prior to the enactment of the Code. For reasons stated in Division III below, this Court finds that the avoidance of preenactment security interests,[1] if allowed, would amount to a retroactive taking of Beneficial's vested property rights in the Debtors' specified personal property without due process of law in violation of the Fifth Amendment to the United States Constitution.

### Division II

Pursuant to § 522(f) of the Code, Plaintiffs filed a Complaint to Avoid the Fixing of a Lien on specific exempt property of the Debtors. Section 522(f)(2) provides in pertinent part that:

§ 522(f). Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\*　　\*　　\*　　\*　　\*　　\*

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

11 U.S.C. § 522(f).

In general, the Debtors' avoidance power under § 522(f) applies to a "lien," defined for purposes of the Code as:

\*　　\*　　\*　　\*　　\*　　\*

§ 101(28) "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation;

\*　　\*　　\*　　\*　　\*　　\*

11 U.S.C. § 101(28). Subsections 101(37) and 101(36) of the Code define the specific type of lien to which the Debtors' § 522(f)(2) avoidance power applies:

\*　　\*　　\*　　\*　　\*　　\*

§ 101(37) "security interest" means lien created by an agreement;

\*　　\*　　\*　　\*　　\*　　\*

§ 101(36) "security agreement" means agreement that creates or provides for a security interest;

\*　　\*　　\*　　\*　　\*　　\*

11 U.S.C. § 101(37), (36).

This Court must first determine whether Congress intended § 522(f) to apply retroactively to liens perfected prior to enactment of the Code. Section 522(f) itself contains no limiting restrictions upon its application. For the reasons stated below, this Court finds that both the language of the Code and its legislative history clearly and unequivocally indicate that Congress intended retroactive application of § 522(f)(2) to preenactment security inter-

---

1. It should specifically be noted that the security interest herein was created and perfected prior to November 6, 1978, the date upon which the Bankruptcy Reform Act was enacted. The Court therefore does not address the constitutionality of the retroactive application of Section 522(f)(2) to avoid security interests created during the gap period, i. e., after the date of enactment, November 6, 1978, but prior to the effective date of the Code, October 1, 1979.

ests in cases commenced on or after October 1, 1979, the effective date of the Code.

■ A well-settled rule of statutory construction provides that, where Congressional intent is unclear, an unconstitutional construction of the ambiguous provisions shall be avoided. In *Wright v. Vinton Branch of the Mountain Trust Bank*, 300 U.S. 440, 461, 57 S.Ct. 556, 561, 81 L.Ed. 736 (1936), a case construing the 1935 Frazier-Lemke amendments to the Bankruptcy Act of 1898, Mr. Justice Brandeis construed "phraseology ... lacking in clarity" with this principle of construction in mind:

> If we were in doubt as to the intention of Congress, we should still be led to that construction by a well settled rule: "When the validity of an act of Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.

300 U.S. at 461, 57 S.Ct. at 561. Following the principle that unconstitutional constructions of ambiguous legislation should be avoided if at all possible, courts have construed amendments to the Bankruptcy Act of 1898 as prospective only to avoid the possible retroactive impairment of pre-existing vested property rights, including security interests similar to that possessed by Beneficial in this case. See, *Holt v. Henley*, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1913); *Ginsberg v. Lindel*, 107 F.2d 721 (8th Cir. 1939); *In re Michael's Cafeteria*, 52 F.Supp. 799 (D.La.1943); *In re Freeze-In Mfg. Corp.*, 128 F.Supp. 259 (E.D.Mich. 1955); *Thomas v. Gulfway Shopping Center, Inc.*, 320 F.Supp. 756 (S.D.Texas 1970).

■ There exists an important exception to this fundamental rule of construction. A statute shall be presumed to apply prospectively only "unless [retroactive operation] be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964), *citing Union Pacific R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199,

34 S.Ct. 101, 102, 58 L.Ed. 179 (1913). The general rule and its exception were reiterated in *Ginsberg v. Lindel*, 107 F.2d 721 (8th Cir. 1939), where the Court stated:

> ... It is the general rule that a retrospective operation will not be given to a statute which interferes with antecedent rights, *unless such be the unequivocal and inflexible import of its terms and the manifest intention of the legislature.*

107 F.2d at 726 (emphasis added). Consequently, the Eighth Circuit in *Ginsberg* refused to retroactively construe a provision of the Chandler Act restricting priority for rent due and owing to a landlord to that amount of rent which accrued within three months before bankruptcy:

> There is nothing contained in the Chandler Act to indicate that Congress intended that section 64, sub. a, should be construed retrospectively; and in the absence of explicit language requiring such construction we are not disposed so to construe it ...

107 F.2d at 726. See also, *Massachusetts Mut. Life Ins. Co. v. George & Co.*, 148 F.2d 42 (8th Cir. 1945) (statute held to operate prospectively and not retroactively where no legislative intent or purpose that its provisions shall operate retroactively was disclosed in the statute).

This Court finds such "unequivocal and inflexible" expression of retroactive intent in the language of the Code. Although § 522(f) itself contains no express language indicating either retroactive or prospective application of its terms, Sections 401–403 and the legislative history of the Code clearly disclose the manifest intent of Congress that such legislation shall operate retroactively. Furthermore, retroactive application of § 522(f) is realistically compelled to provide consistency with the policy considerations underlying the Code.

Title IV of the Bankruptcy Reform Act of 1978 is broadly entitled "Transition," and contains the provisions governing the transition from bankruptcy practice under the Bankruptcy Act of 1898 and the amendments thereto to practice under the 1978

Code. Its twelve sections include provisions dealing with the repeal of the existing bankruptcy legislation and the effective dates of the provisions of the new legislation.

Section 401 of Title IV of the Bankruptcy Reform Act provides:

§ 401(a). The Bankruptcy Act is repealed.

§ 401(a) Title IV, Pub.L.95–598. Section 401 is the repealing provision of the Bankruptcy Act of 1898 and the various bankruptcy amendments thereto. The impact of Section 401 is to repeal all laws in force relating to bankruptcy thereby leaving the Code as the "sole repository of bankruptcy legislation." 1 *Collier on Bankruptcy* ¶ 7.01[2] (15th ed. Supp. 1980).

Section 402(a) of Title IV of the Bankruptcy Reform Act of 1978 provides:

§ 402(a). Except as otherwise provided in this title, this Act shall take effect on October 1, 1979.

§ 402(a) Title IV, Pub.L.95–598. Section 402(a) establishes the generally applicable and primary effective date of the Bankruptcy Code as October 1, 1979; therefore, the repeal provisions of Section 401 are effective as of that same date. This means that cases commenced by the filing of petitions on or after October 1, 1979, are controlled by the 1978 Code. 1 *Collier on Bankruptcy* ¶ 7.01[3] (15th ed. Supp. 1980).

Section 403(a) of Title IV of the Bankruptcy Reform Act of 1978, entitled "Savings Provisions," provides:

§ 403(a). A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of the parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

§ 403(a) Title IV, Pub.L.95–598. Section 403(a) makes it clear that a case commenced under the Bankruptcy Act of 1898 and matters and proceedings which arise in that case or which are related to any such case shall be determined under the old legislation just as though the 1978 Code had not been enacted. 1 *Collier on Bankruptcy* ¶ 7.03(1) (15th ed. Supp. 1980). Moreover, § 403(a) provides that the substantive rights of parties in connection with such bankruptcy case shall be governed by the law applicable to that case as though the 1978 legislation had not been enacted.

The explicit terms of the transition provisions provide that matters which arise in a bankruptcy case are to be governed by the legislation in effect on the date that the case was commenced by the filing of a petition. Section 403(a) explicitly states that the provisions of the 1978 Code are not to affect cases commenced under the 1898 Act and that such cases are to proceed with respect to both substantive and procedural matters as though the 1978 Code were not in effect. Accordingly, § 402(a) clearly provides that cases commenced by filing of petitioners on or after October 1, 1979, the effective date of the Code, shall be controlled by the 1978 Code. Therefore, since the Debtors commenced this case by filing on June 25, 1980, the 1978 Code is the law applicable to the adversary proceeding which arose in said case, and the substantive and procedural matters in connection with said case, *e. g.*, the rights of the parties herein relevant to the consensual lien on Debtors' household property, are governed by the provisions of § 522(f)(2) of the Code.

■ The legislative history of the Code confirms that such retroactive operation was intended by Congress. Assuming, *arguendo*, that the language of the aforementioned transition sections is unclear, resort to reports of the Congressional committees and explanations given on the floor of the Senate and House by those sponsoring the legislation is a permissible tool in the construction of ambiguous statutory provisions. *Wright v. Vinton Branch of the Mountain Trust Bank*, 300 U.S. 440, 463–464, 57 S.Ct. 556, 562–563, 81 L.Ed. 736 (1937). When the legislative history of the Code is examined, it becomes clear that to construe the

aforementioned sections otherwise than as intending retroactive application to pre-enactment security interests would be inconsistent not only with the provisions of the Code, but with its underlying legislative history as well.

■ The comments by the House Judiciary Committee confirm the retroactive construction of Section 522(f) compelled by the language of Sections 401–403:

Section 401 repeals the existing Bankruptcy Act, and certain sections of other laws that amended the Bankruptcy Act, but operated independently. This section repeals all laws currently in force relating to bankruptcy. .

\*　　\*　　\*　　\*　　\*　　\*

Subsection (a) of [Section 403] . . . continues cases pending as of the effective date of the bill without change. The new law will not affect cases commenced under the old law. Those cases will proceed as though this Act did not take effect. The section applies to substantive as well as procedural matters, to matters governed by Federal bankruptcy law as well as matters governed by State law.

H.R.Rep.No.595, 95th Cong. 1st Sess. 458–459 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6414. See also S.Rep.No. 989, 95th Cong. 2d Sess. 166–167 (1978), U.S.Code Cong. & Admin.News 1978, 5787. Read together, these comments indicate that the substantive and procedural matters which arise in a bankruptcy case are to be governed by the applicable bankruptcy law in effect on the date that the case was commenced.

Furthermore, in light of the overall scheme of the Code as a whole, it is clear that Congress intended the Code to be applied to liens created before November 6, 1978, in bankruptcy cases filed on or after October 1, 1979. Since all former bankruptcy legislation was repealed (Section 401(a)) except for cases commenced prior to October 1, 1979 (Section 403(a)), a refusal to apply provisions of the 1978 Code to cases commenced after October 1, 1979, involving preenactment security interests would re-sult in a hiatus in the bankruptcy laws. *Jackson v. Security Industrial Bank*, 4 B.R. 293, 6 BCD 612, 2 CBC 2d 91, 4 BRW 293 (Bkrtcy., D.Colo.1980). Absent retroactive application, certain creditors of a debtor under the Code would have interests not subject to any bankruptcy legislation. *Hoops v. Freedom Finance and Security Industrial Bank*, 3 B.R. 635, 6 BCD 273, 3 BRW 635 (Bkrtcy., D.Colo.1980). Since it cannot be seriously suggested that such was the legislative intent, retroactive application of 522(f)(2) was clearly intended. *Rodrock v. Security Industrial Bank*, 3 B.R. 629, 6 BCD 267, 3 BRW 629 (Bkrtcy., D.Colo.1980). This Court concurs with the reasoning on this issue enunciated in the aforementioned cases, and concludes that § 522(f) was intended to apply to preenactment security interests.

*Division III*

Since the constructional preference for prospectivity is overridden by unequivocal contrary legislative intent to apply § 522(f) retroactively, the Court must address the constitutional question whether such retroactive application of § 522(f)(2) violates the due process clause of the Fifth Amendment by destroying vested property rights of creditors' preenactment security interests.

The retroactive application of § 522(f)(2) sought by Debtors in this case would completely avoid Beneficial's security interest in specific household property created pursuant to their security agreement several months prior to the enactment of the Code. If such retroactive application is allowed, said avoidance provision would eliminate Beneficial's preenactment security interest in Debtors' property and deprive Beneficial of all the rights and remedies available to it under the security agreement and Iowa law. See, Iowa Code §§ 554.9501–.9504 (1979). Therefore, if Debtors succeed, Beneficial's security interest would be of no value, and Beneficial would be treated as a creditor possessing an unsecured claim. For the reasons stated below, this Court holds that the retroactive application of § 522(f)(2) to security interests created pri-

or to the enactment of the Code constitutes a taking of vested property rights without just compensation in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

■ *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), and its progeny are dispositive of the legal issue in this case. *Radford* is binding authority for the constitutional principle that substantive rights in specific property cannot be substantially impaired by legislation enacted after the right has been acquired without violating the property owner's right to due process under the Fifth Amendment. 295 U.S. at 601–602, 55 S.Ct. at 868–869. *See also, Rodrock v. Security Industrial Bank*, 3 B.R. 629, 6 BCD 267, 268, 3 BRW 629 (Bkrtcy., D.Col.1980); *Lucero v. Security Industrial Bank*, 4 B.R. 659, 6 BCD 477, 478, 2 CBC 2d 532 (Bkrtcy., D.Col.1980). In this context, it is clear that Beneficial's vested property rights as a secured creditor are substantial and that avoidance pursuant to Section 522(f) would completely destroy these rights.

In *Radford*, the United States Supreme Court was faced with the question of the constitutionality of Subsection (s) of the Frazier-Lemke Act of 1933, which amended Section 75 of the Bankruptcy Act of 1898. Enactment of the Frazier-Lemke Act was prompted by the Great Depression, and this emergency legislation was intended to provide relief to insolvent farmers threatened by imminent foreclosure of the family farm. Subsection (s) permitted a debtor to obtain a five-year stay of state foreclosure proceedings from a court of bankruptcy. The debtor would retain possession of the mortgaged property, subject to the payment of reasonable rent annually to the mortgagee. At the end of the five-year period, the debtor would pay into the Court an appraised price and thereafter obtain the property free and clear of the original indebtedness. Congress explicitly provided that the provisions of Subsection (s) were applicable only to debts existing at the time the Act became effective. Although the creditor would receive the rents and the appraised price, the lien itself was relinquished without full payment of the underlying debt and the creditor would lose all the rights and remedies available to him under the terms of the mortgage and available to secured creditors under state law.

Writing for the Court, Justice Brandeis noted that the Frazier-Lemke Act was the first bankruptcy act to abridge substantive rights of the mortgagee in specific property held as security, and stated:

> The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the States, it is not prohibited from impairing the obligations of contracts.... But the effect of the Act here complained of is not the discharge of Radford's personal obligation. It is the taking of *substantive rights in specific property acquired by the bank prior to the Act.*

295 U.S. at 589–590, 55 S.Ct. at 863–864 (emphasis added). The Court determined that, prior to the passage of the Frazier-Lemke Act, the secured creditor was entitled under state law to certain rights in specific property held as collateral, including the right to retain a lien on the property until the underlying indebtedness thereby secured was paid. In addition, state law recognized other incidental property rights held by the mortgagee: the creditor's right to realize upon the security by judicial public sale; the right to determine when such sale shall be held, subject only to the discretion of the Court; the right to protect the creditor's interest by bidding at such sale to assure that the mortgaged property was devoted primarily to the satisfaction of the debt; and the right to control the property during the period of default. 295 U.S. at 594–595, 55 S.Ct. at 865–866.

The Court noted that the controlling purpose of the aforementioned state law provisions was to ensure that the mortgaged property was devoted primarily to the satisfaction of the debt thereby secured. The Court then concluded that the taking of

these substantive rights in specific property from the mortgagee effected a substantial impairment of its security, and refused to accept the public purposes sought to be advanced by Congress through the Frazier-Lemke Act as a justification for the deprivation of the mortgagee's rights in the property:

> The province of the Court is limited to deciding whether the Frazier-Lemke Act as applied has taken from the Bank without compensation, and given to Radford, rights in specific property which are of substantial value.

> &ast; &ast; &ast; &ast; &ast; &ast;

> As we conclude that the Act as applied has done so, we must hold it void. For the Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that through taxation, the burden of the relief afforded in the public interest may be borne by the public.

295 U.S. at 601–602, 55 S.Ct. 868–869.

The Frazier-Lemke Act reduced the aforementioned property interests of the mortgagee, acquired prior to the enactment of the Act, solely to the right to retain its lien until the mortgagor, sometime within the five-year period, chose to release the mortgage by paying the appraised value of the property. 295 U.S. at 596, 55 S.Ct. at 866. In *Radford*, the Court held that such retroactive provisions worked a substantial impairment of the mortgagee's vested property rights in violation of the Fifth Amendment. In the instant case, under the Iowa Uniform Commercial Code, *see* Iowa Code §§ 554.9501–.9504 (1979), Beneficial secured substantially the same rights as the mortgagee in *Radford*. However, in contrast to *Radford*, Beneficial's substantive rights in Debtors' specific property would be completely and permanently destroyed if its

lien was avoided by the retroactive application of § 522(f)(2) of the Code.

█ The *Radford* principle that pre-existing liens may not be destroyed without violating the due process clause of the Fifth Amendment is still intact. Two years later, in *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), the Supreme Court held constitutional the post-*Radford* amendment to the Frazier-Lemke Act. However, careful analysis of *Vinton Branch* reveals that this case does not represent a departure from *Radford*. Congress carefully tailored the amended Act to fit within the constitutional guidelines established in *Radford*, preserving to the mortgagee the rights essential to the enjoyment of its security. 300 U.S. at 457, 57 S.Ct. at 559. The amended Frazier-Lemke Act protected the interests of secured creditors by preserving their priorities and liens and assuring the fair application of the secured property to the satisfaction of their claims. See, *John Hancock Mut. Life Ins. Co. v. Bartels*, 308 U.S. 180, 187, 60 S.Ct. 221, 224, 84 L.Ed. 176 (1939); *Rodrock v. Security Industrial Bank*, 3 B.R. 629, 6 BCD 267, 3 BRW 629 (Bkrtcy., D.Col.1980).

█ The continued viability of the broad *Radford* principle that Congress' bankruptcy power, U.S.Const. Art. I, § 8, cl. 4, is subject to the due process constraints of the Fifth Amendment was demonstrated by the Court in *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937). Unlike the bank-mortgagee in *Radford*, the creditors' claims in *Kuehner* for enforcement of contractual indemnity clauses involved no liens upon, or property rights in, the debtor's assets. Upholding a provision limiting the creditors' enforcement remedies under the contract, the Court made the following distinction:

> As pointed out in [*Radford*] there is, as respects the exertion of the bankruptcy power, a significant difference between a property interest and a contract since the Constitution does not forbid impairment of the obligation of the latter .... In-

deed every Bankruptcy Act avowedly works such impairment. While .... the Fifth Amendment forbids the destruction of a contract, it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets.

299 U.S. at 451–452, 57 S.Ct. at 301–302. It is clear that the right affected in *Kuehner* was not a substantive right in specific property, but a contractual right relating to the extent and timing of the remedy. Such rights may be constitutionally altered by Congress in the exercise of its bankruptcy powers through reasonable and nonarbitrary means. Vested property rights, however, may not be totally or partially destroyed by Congress in the exercise of its bankruptcy powers without violating the Fifth Amendment principle of due process. *Ginsberg v. Lindel,* 107 F.2d 721, 726 (8th Cir. 1939) *citing Kuehner, supra.*

In *Ginsberg v. Lindel,* 107 F.2d 721 (8th Cir. 1939), the Eighth Circuit applied the constitutional principle enunciated in *Radford* to preserve a landlord's lien for unpaid rent upon the personal property of the tenant which was kept on the leased premises. The Court drew no distinction between a landlord's lien for rent and a mortgage for purposes of Fifth Amendment protection, and concluded that the Fifth Amendment principle of due process would bar the retroactive application of § 64(a) of the Chandler Act of 1938, amending the Bankruptcy Act of 1898, which would destroy a pre-existing landlord's lien, a vested property right enforceable under Iowa law. The Court said:

> Due process of law "inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing." *Ochoa v. Hernandez,* 230 U.S. 139, 141, 33 S.Ct. 1033, 1041, 57 L.Ed. 1427. Congress, in the exercise of the bankruptcy power, is bound by this principle and may not take

a property right from one creditor and transfer it without compensation to another without violating the Fifth Amendment. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 601, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. When the vested lien of the landlord is taken away by an order of the bankruptcy court and the property impressed with that lien is given to the general creditors of the bankrupt, the landlord is clearly deprived of a property right without just compensation. That is as true when the property right is a landlord's lien as when it is a mortgage.

107 F.2d at 726.

In *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), the Supreme Court held that government destruction of valid mechanics' liens upon manufacturing materials and boat hulls under construction constituted a taking of property interests within the meaning of the Fifth Amendment, explicitly refusing to treat the mechanics' liens differently from the bank's interest in *Radford.* 364 U.S. at 44, 80 S.Ct. at 1566. The nature of the lien itself did not change the lienholders' rights to resort to specific property for the satisfaction of their claims. Consequently, upon the authority of *Radford,* the Court found that the mechanics' lienors were entitled to just compensation:

> This Court held [in *Radford* ] that the bank's property had been taken without just compensation in violation of the Fifth Amendment. No reason has been suggested why the nature of the liens held by petitioners should be regarded as any different, for this purpose, from the interest of the bank held compensable in the *Radford* case.

> \* \* \* \* \* \*

> The total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment "taking".... Before the liens were destroyed, the lienholders admittedly had compensable property. Immedi-

ately afterwards, they had none. This was not because their property vanished into thin air. It was because the Government for its own advantage destroyed the value of the liens.... Since this acquisition was for a public use, however accomplished, whether with an intent and purpose of extinguishing the liens or not, the Government's action did destroy them and in the circumstances of this case did thereby take the property value of those liens within the meaning of the Fifth Amendment.

364 U.S. at 44, 48–49, 80 S.Ct. at 1566, 1568–1569.

The constitutional principle enunciated in *Radford* cannot be distinguished and held inapplicable on the grounds that the creditor's right in *Radford* was a right in real property and therefore more substantial than the rights of Beneficial whose only security in this case is in personal property. The *Radford* principle is clearly grounded upon the due process clause of the Fifth Amendment which restrains the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S.Const. Amend. V. *Armstrong* and *Ginsberg* show that neither the nature of the lien (mortgage, mechanic's lien, or landlord's lien) nor the nature of the property itself (real or personal) is a distinguishing factor affecting the degree of constitutional protection to which the property owner is entitled.

Any lien is a matter of property and not a mere matter of procedure. *Sager v. Burgess*, 350 F.Supp. 1310 (D.Pa.1972), aff'd. 411 U.S. 941, [93 S.Ct. 1923, 36 L.Ed.2d 406] (1973); *In re Pennsylvania Central Brewing Co.*, [114 F.2d 1010] (3rd Cir. 1940); *Britton v. Western Iowa Co.*, 9 F.2d 488 (8th Cir. 1925). Moreover, for constitutional purposes, it makes no difference whether liens are on personal property or real property. Cf. *Armstrong v. United States*, 364 U.S. 40, [80 S.Ct. 1563, 4 L.Ed.2d 1554] (1960); *Ginsberg v. Lindel*, 107 F.Supp. 721 (8th Cir. 1939).

*Rodrock v. Security Industrial Bank*, 3 B.R. 629, 6 BCD 267, 268, 3 BRW 629 (Bkrtcy., D.Col.1980).

The aforementioned cases demonstrate that the *Radford* principle barring the destruction of the pre-existing liens on property is still intact. The legislative history of the Code itself reaffirms the validity of *Radford*, as the following committee reports illustrate:

The Bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard*, 117 U.S. 617, [6 S.Ct. 917, 29 L.Ed. 1004] (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as exempt property. Cf. *Radford.*

\* \* \* \* \* \*

The concept of adequate protection is derived from the Fifth Amendment protection of property interests as enunciated by the Supreme Court. See .... *Radford.*

H.R.Rep.No.595, 95th Cong., 1st Sess. 361, 338–40 (1977); S.Rep.No.989, 95th Cong., 2d Sess. 76, 49 (1978). These comments illustrate that the 95th Congress believed *Radford* was still viable when enacting the Code, recognizing that it could not destroy pre-existing property rights without violating the Fifth Amendment.

This Court concludes that *Radford* is still good law and that *Radford* controls the constitutional issue herein. Accordingly, this Court finds Section 522(f)(2) of the Code unconstitutional when applied to avoid nonpossessory, nonpurchase-money security interests created prior to the enactment of the Code. Notwithstanding the permissible and laudable public purpose to protect debtors from overreaching creditors and the low monetary value of each item of collateral, the retroactive destruction of creditors' rights in such property cannot be constitutionally sanctioned. Substantive rights in specific property perfected prior to the enactment of the Code are protected by the Fifth Amendment, and the retroactive

extinguishment of such valid liens violates the due process rights guaranteed therein.[2]

Based upon the language of the Code, its legislative history, and general rules of statutory construction, this Court holds that Section 522(f)(2) was intended by Congress to apply to security interests created prior to the enactment of the Code in a case filed after the effective date of the Code. However, this Court further holds that the retroactive application of Section 522(f)(2) to avoid nonpossessory, nonpurchase-money security interests created prior to enactment of the Code violates the Fifth Amendment under the principle of *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), and its progeny.

**2.** It should be noted here that the Supreme Court has upheld a provision of the Frazier-Lemke act which permitted a debtor to redeem mortgaged property at an appraised value fixed by the court that was less than the underlying indebtedness, resulting in less than full satisfaction of the claims of certain creditors. See, *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940). However, the Radford principle that vested property interests may not be destroyed is still intact. Although the Court in *Union Central Life Ins. Co.* allowed the debtor an opportunity to redeem at the value fixed by the court before ordering a public sale, the liens of the secured creditors were preserved and "safeguards were provided to protect their rights throughout the proceedings, to the extent of the value of the [secured] property." 311 U.S. at 278, 61 S.Ct. at 199. The Court stressed that this procedure did not deprive creditors of the assurance that the value of the secured property would be devoted to the satisfaction of their claims. The debtor would obtain the property at its actual value, thereby preserving to the mortgagee its substantive property rights, *i. e.*, the right to retain a lien on the property until it realized a fair and reasonable value upon the security in a manner similar to a judicial sale.

Similar principles have been recognized in other areas of bankruptcy law. For example, railroad reorganization plans adjusting the claims of a creditor have been upheld against constitutional due process attacks "so long as the creditor gets all the value of his lien and his share of any free assets." *Reconstruction Finance Corp. v. Denver & R.G.W.R. Co.*, 328 U.S. 495, 533, 66 S.Ct. 1282, 1301, 90 L.Ed. 1400 (1946); *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 154–155, 95 S.Ct. 335, 364, 42 L.Ed.2d 320 (1974).

The principles of *Union Central Life Ins. Co.* underlie the debtor's right of redemption provided by Section 722 of the 1978 Code:

Because the application of 11 U.S.C. § 522(f)(2) to Defendant Beneficial's pre-enactment security interest herein would deprive Beneficial of its due proces rights guaranteed by the Fifth Amendment, Plaintiffs-Debtors' Complaint to Avoid the Fixing of a Lien under 11 U.S.C. § 522(f)(2) is denied.

**§ 722. Redemption**
An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722. The right of redemption under Section 722 allows the debtor to redeem household personal property exempt under Section 522 from a lien securing a dischargeable consumer debt by paying the lienholder the amount of the allowed secured claim. Under Section 506(a), the amount of the allowed secured claim of an undersecured creditor is the value of the secured party's collateral. See 11 U.S.C. § 506(a); H.R.Rep.595, 95th Cong., 1st Sess. 356 (1977); S.Rep.No.989, 95th Cong., 2d Sess. 68 (1978). Section 506(a) states that "such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use . . . ." 11 U.S.C. § 506(a).

It is clear that a debtor may not, consistent with constitutional due process, completely avoid vested property rights in the form of a nonpossessory, nonpurchase-money security interest in household goods perfected prior to the enactment of the Code. However, the debtor's right of redemption serves to limit the creditor's constitutionally protected rights to the extent of its interest in the value of such secured household property.