**In re Richard Allen STEINART.**

**U. S. LIFE CREDIT CORPORATION, Plaintiff,**

v.

**Richard Allen STEINART, Defendant.**

**Bankruptcy No. 480–00015.**

United States Bankruptcy Court, W. D. Louisiana, Lafayette—Opelousas Division.

June 2, 1980.

Bruce A. Gaudin, Opelousas, La., for U. S. Life Credit Corp.

G. Douglas Dean, Opelousas, La., for debtor.

William C. Sandoz, Opelousas, La., Trustee in Bankruptcy.

## STATEMENT OF THE CASE

RODNEY BERNARD, Jr., Bankruptcy Judge.

On March 16, 1979, the debtor borrowed a sum of money from the plaintiff, U. S. Life Credit Corporation, purportedly securing the loan with a chattel mortgage on several items of household furnishings.

The debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 11, 1980. He claimed as exempt the property allegedly mortgaged to U. S. Life Credit Corporation. The plaintiff filed an objection to the debtor's list of exempt property, and the debtor then filed a complaint to avoid the lien under 11 U.S.C. § 522(f).[1] The hearings were consolidated for trial on March 5, 1980.

The proof of claim form filed by the creditor indicates that the claim is secured; however, the written proof attached to the claim consists only of a combination disclosure form and promissory note signed by the debtor and a schedule of household and consumer goods allegedly mortgaged to secure the loan. The promissory note is signed by two witnesses and a notary public and purports to be identified with an act of chattel mortgage acknowledged before the notary on March 16, 1979. However, a copy of the chattel mortgage is not included with the claim, and therefore, there is no proof of a valid lien.

If the creditor does not have a valid lien, the issue presented is moot, and the creditor's objection to the debtor's list of exempt property must be denied. However, in the event that there is a chattel mortgage on the debtor's property, the Court will address the issue.

The facts are otherwise not in dispute. The parties stipulated that the alleged chattel mortgage at issue is a nonpossessory, nonpurchase-money security interest in household furnishings which impairs an exemption to which the debtor would have been entitled under 11 U.S.C. § 522(b).

The sole issue is whether 11 U.S.C. § 522(f) should be given effect to avoid a

---

1. 11 U.S.C. § 522(f) provides:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids of the debtor or a dependent of the debtor."

valid lien in existence prior to the effective date of the new Bankruptcy Code.

## CONCLUSIONS OF LAW

Several Constitutional provisions have applicability to this issue:

"The Congress shall have power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . .", Article I, Section 8, Clause 4.

"No Bill of Attainder or ex post facto Law shall be passed.", Article I, Section 9, Clause 3.

"No State shall . . . pass any Bill of Attainder, ex post facto law, or Law impairing the Obligation of Contracts . . . .", Article I, Section 10, Clause 1.

"No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .", Fifth Amendment.

■ As seen by the provisions cited above, Congress is not prohibited from passing laws that impair contractual obligations; only States are so prohibited. Although Congress is prohibited from passing "ex post facto" laws, this phrase refers only to laws which impose a punishment for an act which was not punishable at the time it was committed, or in other words, refers only to criminal laws. See *Burgess v. Salmon*, 97 U.S. 381, 24 L.Ed. 1104 (1878).

Many cases in the bankruptcy court have been decided in which state exemption laws were not allowed to be given retroactive effect. The reasons for findings of unconstitutionality in these cases were founded on Article I, Section 10, Clause 1, barring states from impairing the obligation of contracts. See, for example, *Bank of Minden v. Clement*, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857 (1921); *Edwards v. Kearzey*, 96 U.S. 595, 24 L.Ed. 793 (1878); *Gunn v. Barry*, 82 U.S. 610, 21 L.Ed. 212 (1873); *In re Fox*, 16 F.Supp. 320 (D.C.Cal.1936); *In re Ball*, 3 BCD 1276 (N.D.Cal.1977); *In re Grocholski*, 3 BCD 119 (Wis.1977).

The Congress is given the power by the Constitution to establish uniform laws on bankruptcy. Even greater power is given by Clause 18 of Article I, Section 8, whereby Congress is "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers . . . . .".

The U. S. Supreme Court has had numerous opportunities to define the power of these Constitutional provisions. In 1902, the Court stated in *Hanover National Bank v. Moyses*, 186 U.S. 181 at page 188, 22 S.Ct. 857, at page 860, 46 L.Ed. 1133, "The subject of 'bankruptcies' includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property. The grant to Congress involves the power to impair the obligation of contracts, and this the states were forbidden to do."

In a case determining the effect of a law, passed by authority of the Commerce Clause, on a valid agreement made prior to the passage of the law, the U. S. Supreme Court decided that the private agreement must fall. The Court reasoned that any agreement between the parties must be regarded as having been made subject to the possibility that Congress might exert its Constitutional power in such a way that the agreement would be rendered unenforceable or impaired in value. The Court went on to say that the framers of the Constitution never intended that the power of Congress would be hampered by a contract previously made between private parties. *Louisville & N. R. Co. v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1910). The Court applied this same reasoning in *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938), reh. den. 305 U.S. 668, 59 S.Ct. 56, 83 L.Ed. 434, a case dealing with the effect of the bankruptcy laws on a mortgage contract. The Court stated in *Wright* at page 516, 58 S.Ct. at page 1033, "The mortgage contract was made subject to constitutional power in the Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract between petitioner and respondent." See also, *Home Building and*

*Loan Assoc. v. Blaisdell*, 290 U.S. 398 at page 435, 54 S.Ct. 231 at page 239, 78 L.Ed. 413.

The right to due process as granted by the Fifth Amendment has been repeatedly defined as the opportunity to be heard upon such notice and proceedings as are adequate to safeguard the rights granted by the Constitution. See, for example, *Anderson National Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944). In the case of *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937), the petitioner brought a suit concerned with section 77b of the Bankruptcy Act which limited the claim of a landlord with a long-term lease to an amount not exceeding three years' rent. The landlord felt the Bankruptcy Act offended the due process guaranty through the destruction of rights conferred by the contract between the petitioner and the lessee. The court stated in response to this argument at page 452, 57 S.Ct. at page 301:

"The equitable distribution of the bankrupt's assets, or the equitable adjustment of creditors' claims in respect of those assets, by way of reorganization, may therefore be regulated by a bankruptcy law which impairs the obligation of the debtor's contracts. Indeed every Bankruptcy Act avowedly works such impairment. While, therefore, the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets."

The Court found the statutory provisions to be fair, reasonable and not offensive to the due process guaranty.

In a recent case arising in the Bankruptcy Court of the District of Nevada, Judge Goldwater addressed very nearly the same issue as that in the instant case. In that case, *In re Bradford*, 6 BCD 75 (1980), the plaintiff-creditor had attached property of the debtor more than 90 days prior to the debtor's commencing a bankruptcy proceeding. The debtor then sought to avoid the judicial lien on the basis of the remedy provided by 11 U.S.C. § 522(f). Judge Goldwater stated the question before him as follows: "Is the statute unconstitutional when applied to the avoidance of a judicial lien under Section 522(f) to establish an exemption prior to the statute?" He found that the avoidance of a pre-Code judicial lien does indeed impair the obligation of a contract but Congress is not forbidden from so doing. He entered judgment avoiding the plaintiff's judicial lien to the extent it impaired the defendant's exemption.

In another recent decision, as yet unreported, the issue concerning the retroactive application of Sec. 522(f) was resolved by a finding that such application is unconstitutional as applied to security agreements made and perfected prior to November 6, 1978, the enactment date of the Bankruptcy Code of 1978. See *In re Rodrock*, 3 B.R. 629 (Bkrtcy. Colorado, April 25, 1980). In his well-reasoned, well-written opinion, Bankruptcy Judge John P. Moore relied on *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), finding that case "stands for the proposition that a substantive right in specific property cannot be substantially impaired by legislation enacted after the right has been created without doing violence to the property owner's right to due process." Although the Government argued that *Radford* has been "enervated" by subsequent decisions and is therefore no longer precedent, Judge Moore analyzed the pertinent Supreme Court decisions and found the principle of *Radford* still valid today. Recognizing that Congress had a substantial motivation for the enactment of Sec. 522(f), i. e., in furthering the "fresh start" objectives of the bankruptcy law, Judge Moore believes that *Radford* "teaches us that such an objective cannot be achieved at the expense of creditors whose rights in specific property have attached prior to the enactment of the law."

■ This Court subscribes wholeheartedly to the conclusion reached under the facts of the case before Judge Moore. However, in the instant case the security agreement between the parties before the court was made in March of 1979, well after the present bankruptcy law was enacted. Therefore, the creditor must be charged with the knowledge that his lien could be affected by Sec. 522(f) if the debtor were to initiate bankruptcy proceedings after October 1, 1979. Following *Louisville & N. R. Co. v. Mottley,* supra, and *Wright v. Union Central Life Ins. Co.,* supra, this Court holds that the possibility that the security agreement would be rendered unenforceable or impaired in value, due to the Constitutional power of Congress, was impliedly written into the contract between the debtor and the plaintiff.

Although Congress did not expressly state its intent to apply Section 522(f) retroactively, the Act was passed, with the recognition that certain lien interests would be held unenforceable, in order to give the debtor his "fresh start". The historical purpose of the allowance of exemptions has been to protect a debtor from his creditors and to provide him with the basic necessities of life. With this protection, even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. Sec. 522(f) was adopted specifically in recognition of the fact that some creditors lending money to a consumer debtor will take a security interest in all of the debtor's household goods, and then have the debtor waive his exemption rights. The creditor then may use threats of repossession as a means of leverage in obtaining payment. Although the household goods themselves may be of little resale value, the replacement cost is high, so the debtor is coerced into making payments he simply cannot afford to make. By permitting the debtor to avoid these nonpurchase money security interests, Sec. 522(f) eliminates any unfair advantage creditors may have. See, Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200, H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977), pp. 126,

127, U.S.Code Cong. & Admin.News 1978, p. 5787. See also *Credithrift of America, Inc. v. Meyers,* 2 B.R. 603 (Bkrtcy.E.D.Mich. 1980).

Since the purpose of Sec. 522(f) is to remedy the effect of an overreaching creditor on an uninformed debtor, it would seem that in all fairness the results should differ where the property in question is truly valuable and was given as security due to its value. For example, where there is no dollar limit on the value of exemptions, as is the exemption law in Louisiana, expensive antique furniture could be used in the household but its resale value is readily apparent. For a case in point, see *Credithrift of America, Inc. v. Meyers,* supra, wherein the debtor sought to avoid a nonpossessory, nonpurchase-money security interest in his pick-up truck. The court found that the truck was not a tool of the debtor's trade, rendering Section 522(f) inapplicable to the facts. The court commented that a motor vehicle is a legitimate source of security and not the kind of collateral that gave rise to the problems with which Section 522(f) was concerned, and since the statute does materially affect the rights of secured creditors, its application should not be extended beyond the evil it attempts to reach.

■ Having found that the retroactive application of Section 522(f) is not disallowed by the Constitution, this court must conclude that the debtor may avoid the security interest on his exempt household furnishings. However, since the statute refers only to the avoidance of a lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b)" of section 522, the chattel mortgage is still valid as to nonexempt property.