## In re Bernice DAVIDSON, Debtor.

### Bankruptcy No. NG 80–00354.

United States Bankruptcy Court, W. D. Michigan.

Feb. 25, 1981.

Bankruptcy Law Clinic, P. C., Steven J. Carpenter, Grand Rapids, Mich., for debtor.

Van Hattum, Hickman & Harrison, P. C., Walter L. Harrison, Grand Rapids, Mich., for objecting creditor.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

Under the Chapter 13 plan in this case debtor is to pay the trustee $96 bi-weekly, from which there was to be paid payments first to priority claims, then a secured claim and finally, a total of 5% to unsecured creditors.

Debtor's statement slows that she is separated, has two children, ages 10 and 8 and that she received a discharge in a previous bankruptcy case filed in 1978.

Her "monthly family budget" shows total income of $948 and expenses of $738.00 and after payments on her plan, she would have had $2.00 left over. Her expenses seem reasonable so far as itemized. One expense is designated "miscellaneous" and is for $40.00. The Court would find that her payments are her best effort on a monthly basis although there is no reason given why her payments should stop at 32.11 months and not continue for 36 months which would result in a 26.19% payment to unsecured creditors.

Debtor's assets consist of the following:

| | |
|---|---|
| 1978 Olds Cutlass (no equity) | $5,175.00 |
| Household goods | 1,785.00 |
| Personal effects | 600.00 |
| Jewelry | 200.00 |
| Gun | 140.00 |
| Savings | 5.00 |

There can be no question but that unsecured creditors would receive nothing under Chapter 7. Under the plan creditors would receive the following:

| | |
|---|---|
| Attorneys fees | $ 600.00 |
| Secured creditor (automobile) | 5,175.00 |
| Unsecured creditors 5% | 169.90 |
| Total | $5,944.90 |

Debtor could not receive a discharge in a Chapter 7 filing until 1984. 11 U.S.C. Sec. 727(a)(8). However, under Chapter 13, debtor will receive a discharge of unsecured debts of $3,398.00 by the payment of $169.90.

Under this Court's holding in *In re Blackwell*, 5 B.R. 748, (Bkrptcy, W.D.Mich., 1980) and *In re Hurd*, 4 B.R. 551, (Bkrptcy, W.D.

Mich., 1980), I find that the plan in this case is not filed in good faith as required by 11 U.S.C. Sec. 1325(a)(3).

There may be another ground contained in the Code for denying confirmation of this Chapter 13 Plan.

Section 1322(b)(1) states:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated;"

Section 1122 simply requires that any claim or interest placed in a class be "substantially similar" to the other claims or interests in that class, with the exception that dissimilar unsecured claims may be placed in one class if this is administratively convenient.

■ Does this plan "designate a class or classes of unsecured claims"? By its own terms it takes all allowed claims and separates them into classes. "Class 1" is the allowed secured claim on the 1978 Cutlass, and "Class 3C" consists of the unsecured claims. Actually the attorney's fee and other administrative costs are also treated like a class, and they are also unsecured. I would find that the plan does "designate a class ... of unsecured claims" under Section 1322(b)(1). Therefore, because a plan must comply with all provisions in Chapter 13 to be confirmed, 11 U.S.C. Section 1325(a)(1), it must be shown that the plan does not unfairly discriminate against the unsecured class of claims.

I believe that the plan unfairly discriminates against the unsecured creditors in "Class 3C," mostly for the same reasons that I find the plan to fail the "good faith" tests. A difference in the amounts offered to different classes is not "unfair discrimination" by itself. See *In re Kovich*, 4 B.R. 403 (Bkrtcy, W.D.Mich.1980). But, if the class of unsecured creditors is not to receive even "meaningful" payments, as defined in *In re Hurd, supra*, the discrimination does become "unfair" and, thus, in violation of 11 U.S.C. Section 1322(b)(1). Here, the debtor proposes putting practically all of

her effort into paying off her new attorney and saving a $5,175.00 automobile, with only a token payment to the rest of her creditors. All of this comes after receiving an earlier bankruptcy discharge in 1978. This is unfair discrimination.

■ The objecting creditor contends that Chapter 13 is unconstitutional. I cannot agree. It is true that the time of the adoption of the U.S. Constitution bankruptcy was limited to involuntary bankruptcies filed against traders. See *In re Hurd, supra*. But, acts passed since the adoption of the Constitution have generally held the Acts and most amendments to be constitutional. The Acts of 1841 and 1867 were held to be constitutional by lower courts but these cases did not reach the United States Supreme Court. However, the constitutionality of the Act of 1898 was considered in *Hanover National Bank of the City of New York v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1901). Action was brought in the Circuit Court for the District of Tennessee on a judgment recovered in a Mississippi state court. The debtor had filed a voluntary petition under the Bankruptcy Act of 1898 and had received a discharge. A demurrer was filed to the plaintiff's declaration and judgment was entered dismissing the case. The plaintiff claimed error in the following respects:

1. The Act violated the 5th Amendment in that:

a. It does not provide for notice as required by due process.

b. Ten days notice by mail to oppose discharge was so unreasonably short as to be a denial of notice.

c. Grounds of opposition to discharge are so unreasonably limited as to deny a right of opposition.

2. The Act violates Art. 1, Sec. 8, par. 4 of the Constitution in that:

a. It does not establish uniform laws on the subject of bankruptcies throughout the United States (for example exemptions were determined by state laws).

b. It delegates certain legislative powers to the several states in respect to bankruptcy proceedings.

c. It provides that other than traders may be adjudged bankrupt and this may be done on a voluntary petition.

The court affirmed the Circuit Court stating at page 192:

"Congress may prescribe any regulations concerning discharge in bankruptcy that are not so grossly unreasonable as to be incompatible with fundamental law, and we cannot find anything in this act on that subject which would justify us in overthrowing its action."

In holding that Sec. 77, a proceeding for reorganization of a railroad engaged in interstate commerce, added to the 1898 Act by Act of March 3, 1933, C. 204, 47 Stat. 1467, to be constitutional, the court in *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, Rock Island & P. Ry. Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935) stated at page 671, 55 S.Ct. at 604, after reviewing the history of bankruptcy:

"The fundamental and radically progressive nature of these extensions becomes apparent upon their mere statement; but all have been judicially approved or accepted as falling within the power conferred by the bankruptcy clause of the Constitution. Taken altogether, they demonstrate in a very striking way the capacity of the bankruptcy clause to meet new conditions as they have been disclosed as a result of the tremendous growth of business and development of human activities from 1800 to the present day. And these acts, far-reaching though they be, have not gone beyond the limit of congressional power; but rather have constituted extensions into a field whose boundaries may not yet be fully revealed."

Section 75 of the Bankruptcy Act, which in part extended the period of redemption, from a foreclosure sale, etc., was also held constitutional. *Wright v. Union Central Life Ins. Co.*, 304 U.S. 542, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938); *Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, Va.*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937).

Various aspects of Chapter X, previously Sec. 77B of the Bankruptcy Act, corporate reorganization proceedings, have been held constitutional, *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), *reh. den.* 329 U.S. 833, 67 S.Ct. 497, 91 L.Ed. 706 (1947); *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937).

Thus far, the only attack on the constitutionality of the Bankruptcy Reform Act of 1978 involves Sec. 522(f) of Title 11 of that Act which provides for invalidating non purchase money, non possessory liens on certain exempt property as applied to security interests created before the effective date of that Section, October 1, 1979. While there is no agreement on this issue, most of the decisions indicate that the application of Sec. 522(f) to these security interests does not violate the Constitution. *In re Teske*, Case No. HG 80–00136 (Bkrptcy, W.D.Mich., 1981); *In re Curry*, 5 B.R. 282 (Bkrptcy, N.D.Ohio, 1980); *In re Bradford*, 5 B.R. 18, (Bkrptcy, D.Neb., 1980); *In re Head*, 4 B.R. 521, (Bkrptcy, D.Tenn., 1980); *In re Ambrose*, 4 B.R. 395, (Bkrptcy, N.D.Ohio, 1980); *In re Steinart*, 4 B.R. 354, (Bkrptcy, W.D.La., 1980); *In re Hill*, 4 B.R. 310, (Bkrptcy, N.D.Ohio, 1980).

The test appears to be that any legislation by Congress relating to a discharge is constitutional unless it is "so grossly unreasonable as to be incompatible with fundamental law." Chapter 13 under the 1978 Act is a fair, just, and reasonable improvement on the Chapter XIII under the 1898 Act. It benefits both the debtor and the creditor without placing an unreasonable burden on either. It allows the debtor to pay off his debt in full or a substantial part so as to keep his self respect and not unduly ruin his credit, to save his home, his furnishings, his automobile and to salvage his equity in other assets subject to security interests while protecting the rights of the secured creditor. It allows a discharge of debts which would otherwise be nondischargeable which will aid in the rehabilitation of certain debtors in a manner that will best repay an injured party and society. It

prevents certain unreasonable creditors from blocking plans as a means of placing pressure on the debtor for special treatment.

I would agree that if Chapter 13 is construed as allowing a debtor to obtain a discharge of his debts including those obtained by false pretenses, false representations, fraud, embezzlement, larceny, willful and malicious injury to others or property of others, including educational loans, no matter how often he files, without contributing any amount or a nominal amount to his unsecured, non priority creditors and, in addition, obtain help through the courts in saving his property from foreclosure from secured creditors, then it is "so grossly unreasonable as to be incompatible with fundamental law" and, thus, unconstitutional. However, only a few Courts have held that this was the intent of Congress, and this court is not one of them. *In re Hurd, supra.*

For the reasons stated above, this plan is not filed in good faith and the plan is not confirmed. This case will be adjourned to a new date when the debtor may either file an amended plan or consent to converting the case to Chapter 7. Otherwise, the case will be dismissed.