In re Clifford John NOLAND, Sharon Lee Noland, Debtors.

G. F. C. CORPORATION OF KANSAS, Plaintiff,

v.

Clifford John NOLAND, Sharon Lee Noland, Defendants.

Bankruptcy No. 80–20336.

United States Bankruptcy Court, D. Kansas.

Aug. 27, 1981.

Joseph A. Bukaty, Kansas City, Kan., for debtor-defendants.

Robert Schollars, Kansas City, Mo., John J. Lyons, Jr., Prairie Village, Kan., for plaintiff.

Hosea Ellis Sowell, Kansas City, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on December 17, 1980, upon the objection of G.F.C. Corporation of Kansas to an avoidance of their lien. Plaintiff, G.F.C., was represented by Robert Schollars, who appeared by John J. Lyons, Jr., local counsel. Defendants, Clifford John Noland and Sharon Lee Noland, were represented by Joseph A. Bukaty.

## FINDINGS OF FACT

The facts herein are not disputed. The Court, after hearing arguments of counsel and examining the pleadings filed herein, including exhibits, finds as follows:

1. That the Court has jurisdiction over the parties and subject matter.

2. That on August 27, 1979, plaintiff loaned defendant money and took a nonpossessory, nonpurchase-money security interest in household goods and furniture. Said security interest was properly perfected.

3. That on April 21, 1980, defendants filed a voluntary petition under Chapter 7. The plaintiff was listed as a secured creditor. Defendants estimated the value of said security at $2,000.00, and claimed said household goods and furniture as exempt.

4. That on July 21, 1980, the parties executed an agreement to reaffirm the $3,034.00 balance due on the note. Plaintiff filed an application for approval of the agreement on July 31, 1980. Said reaffirmation agreement was never approved by the Court.

5. That on November 4, 1980, defendant filed an application to avoid the $3,034.00 lien on household goods and furniture.

6. That on November 19, 1980, plaintiff filed an objection to the application to avoid lien.

7. That on November 19, 1980, defendant's discharge was granted.

### ISSUES

I. WHETHER § 522(f)(2) WAS MEANT TO APPLY TO SECURITY INTERESTS VESTING AFTER THE ENACTMENT DATE BUT BEFORE THE EFFECTIVE DATE OF THE CODE; AND WHETHER SUCH RETROACTIVE APPLICATION IS CONSTITUTIONAL.

II. TO WHAT EXTENT CAN A LIEN BE AVOIDED WHEN THE LIEN IS GREATER THAN THE FAIR MARKET VALUE AND THE CLAIMED EXEMPT VALUE OF THE PROPERTY?

III. WHETHER AN UNAVOIDED PORTION OF A LIEN CAN BE SATISFIED BY A REAFFIRMATION OF THE DEBT AFTER THE DISCHARGE HAS BEEN GRANTED.

### CONCLUSIONS OF LAW

Section 522(f) of the Bankruptcy Code states in pertinent part, as follows:

*"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—*

. . . . .

*(2) a nonpossessory, nonpurchase-money security interest in any—*

*(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;"*

### I.

In the instant case, the debtors want to avoid a lien that vested on August 27, 1979, between the enactment and effective dates of the Code. The Tenth Circuit held that Congress intended for section 522(f) to apply to all debtors who filed petitions under the Code. Thus, Congress intended for § 522(f) to apply to security interests vesting before the effective date of the Code (October 1, 1979). *In re Rodrock,* 3 B.R. 629 (Bkrtcy., D.Colo.1980), *aff'd* 642 F.2d 1193 (10th Cir. 1981).

The Tenth Circuit also held in *In re Rodrock,* that the retroactive application of § 522(f) to security interests vesting before the enactment date (Nov. 6, 1978) was unconstitutional. However, the Tenth Circuit did not say whether the retroactive application of § 522(f) to security interests vesting between the enactment and effective dates was unconstitutional.

This Court held that the retroactive application of § 522(f) to such gap security interests was constitutional. *Matter of Primm,* 6 B.R. 142 (Bkrtcy., D.Kan.1980). To date the Tenth Circuit has not overruled that portion of the *Primm* holding. There-

fore, this Court maintains now, as then, that § 522(f) can be constitutionally applied to gap security interests.

This Court is well aware that other bankruptcy courts in this district do not agree with its holding in *Matter of Primm, supra.* Those courts held that it is unconstitutional to retroactively apply § 522(f) to such gap security interests because creditors were not on notice that liens created during the interim between the enactment and effective dates could be avoided under § 522(f). *In re Johnson*, 11 B.R. 909 (Bkrtcy., D.Kan. June 18, 1981); *In re Freeman, et al.*, No. 81–40074 (D.Kan. August 12, 1981).

 Those courts reasoned that if creditors read § 402 and § 522(f) together, the language did not put them on notice that § 522(f) applied retroactively to gap security interests. Section 402 says that except as otherwise provided, the Act takes effect on October 1, 1979. Both courts reasoned that § 522(f) did not indicate that it took effect on a date besides the general effective date of the Code. As Judge Robert Morton stated in *Johnson, supra,* "It was pursuant to § 522 that the federal exemptions were created. Since the federal exemptions were not effective until October 1, 1979, no lien could impair them until that date." Thus, Judge Morton concluded, creditors should have been on notice that the power to avoid certain liens that impaired exemptions could not exist until the effective date, as well.

This Court rejects that rationale. Section 522(b)(1) created federal exemptions. Section 522(b)(2), however, preserved the debtor's right to claim, in the alternative, exemptions under other federal laws and under state or local laws. The right to claim these exemptions existed under the old Act, § 6. Thus these exemptions could be impaired by a lien before the effective date of the new Code. From the date of enactment, therefore, creditors were on notice that certain liens could be avoided to the extent those liens impaired pre-existing exemptions or the newly created federal exemptions. The fact that the federal exemptions came into existence on the effective

date of the Code, is immaterial. As one bankruptcy court aptly explained in *In re Webber*, 7 B.R. 580, 582 (Bkrtcy., D.Ore. 1980):

" . . . *there is no indication in legislative history or in the Code itself that Congress felt security agreements entered into between the enactment date of November 6, 1978, and the effective date of October 1, 1979, should be immune from the effects of its remedial legislation.*

\*　　\*　　\*　　\*　　\*　　\*

*If a debtor would not be permitted to avoid the security interest simply because it was created by an agreement made before the effective date of the Code, his exemption right itself would become meaningless, and even though he were a debtor filing after October 1, 1979, he would wind up in the same predicament as was abhored by the Code's drafters. Such a consequence could not have been intended by Congress.*"

The overwhelming weight of authority holds that creditors who obtained nonpossessory, nonpurchase-money security interests during the interim period were on sufficient notice of the effect of § 522(f)(2) and thus, proceeded at their own risk. Creditors are always chargeable with the knowledge that their rights and remedies may be affected by newly enacted legislation. *In re Pommerer*, 10 B.R. 935 (Bkrtcy., D.Minn. 1981); *In re Teske*, 3 Bankr.L.Rep. (CCH) ¶ 67844 (E.D.Va.1981); *In re Coleman*, 10 B.R. 772 (Bkrtcy., D.Md.1981); *In re Seltzer*, 7 B.R. 80 (Bkrtcy., D.Colo.1980); *In re Sweeney*, 7 B.R. 814 (Bkrtcy., E.D.Wisc. 1980); *In re Webber*, 7 B.R. 580 (Bkrtcy., D.Ore.1980); *In re Head*, 4 B.R. 521, 6 B.C.D. 489, 2 C.B.C.2d 366, (Bkrtcy., E.D. Tenn.1980); *In re Steinart*, 4 B.R. 354, 6 B.C.D. 623 (Bkrtcy., W.D.La.1980).

## II.

 Section 522(f)(2) allows the debtor to avoid a lien on a nonpossessory, nonpurchase-money security interest in household goods and furnishings, " . . . *to the extent that such lien impairs an exemption to*

*which the debtor would have been entitled under subsection (b) . . ."* of § 522. Section 522(b) allows the debtor to elect either the state or the federal exemption package. Debtors elected the state package.[1] At the time debtors filed their petition, the relevant Kansas exemption law, K.S.A. 60–2304, read as follows:

> *"Every person residing in this state, and being the head of a family, shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property:*
>
> *(1) The furnishings, equipment and supplies, including food, fuel and clothing, for the family for a period of one (1) year on hand and reasonably necessary at the principal residence of the family."*

This Court is called upon to answer two questions in order to determine how much of the $3,034.00 lien is avoidable here: (1) Does the lien impair an exemption to which the debtors would have been entitled under K.S.A. 60–2304(1); and (2) if so, what is the dollar amount of the exemption to which the debtors would have been entitled?

Plaintiff urged this Court to find that the debtors would not have been entitled to an exemption under § 522(b) because the debtors had no equity in the property. Therefore, plaintiff argued, the lien did not impair an exemption and thus, may not be avoided.

Some courts hold that equity is not a prerequisite to being entitled to an exemption under § 522(b). *In re Van Gorkom,* 4 B.R. 689 (Bkrtcy., D.S.D.1980); *In re Dubrock,* 5 B.R. 353, 2 C.B.C.2d 776 (Bkrtcy., W.D.Ky.1980); *In re Ford,* 3 B.R. 559, 1 C.B.C.2d 840 (Bkrtcy., D.Md.1980).

However, this Court has found some support for plaintiff's proposition that without equity in the property, one is not entitled to an exemption. *In re McCoy,* 643 F.2d 684 (10th Cir. 1981); *In re Cummings,* 413 F.2d 1281 (10th Cir. 1969). The instant case however, can be distinguished from these cases.

In *McCoy,* the Tenth Circuit construed the Oklahoma exemption statute, 1977 Okla.Sess.Laws ch. 238, sec. 1, § 1(10) and sec. 2, § 4. That statute provided for an exemption of:

> *"One (1) motor vehicle having an <u>equity value</u> not to exceed One Thousand Five Hundred Dollars ($1,500.00)."* (emphasis supplied)

In *Cummings,* the Tenth Circuit construed the Colorado exemption statute, Colo.R.S. 1963, § 77–2–2(1)(f). That statute exempted:

> *"The household goods owned and used by the head of a family or owned by such head and used by his or her dependents to the extent of seven hundred fifty dollars in value and owned and used by a single person to the extent of two hundred fifty dollars in value."*

Value was defined by Colo.R.S.1963, § 77–2–1(6) as follows:

> *"Value is the <u>fair market value</u> of any property <u>less</u> the amount of any lien or <u>liens</u> thereon valid as between the owner of the property and the holder or holders of any such lien or liens."* (emphasis supplied)

The household goods exemption section in the Kansas statute, K.S.A. 60–2304(1) does not limit the exemption to the debtor's equity in the property. In fact, K.S.A. 60–2304(1) does not put any value limitations on the exemption. Thus *Cummings* and *McCoy, supra,* are not applicable here.

This Court finds that under the Kansas statute, the debtors are entitled to an exemption whether they have equity or not. Had our legislature intended for the exemption to be limited to the equity value, it would have drafted K.S.A. 60–2304(1) to read like the Colorado or Oklahoma statutes. Instead, our legislature chose not to put any value limitations on the household goods and furnishings exemption.

---

1. Debtors filed their petition before the April 28, 1980, effective date of Kansas opting out of the federal exemption package.

The legislative history of § 522(f) indicates a strong Congressional desire to protect debtor's interests in personalty.

"*Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.*

*In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditor's true intentions, are coerced into payments they simply cannot afford to make.*" H.R.Report No. 95–595, 95th Cong., 1st Sess., p. 127 (1977); U.S.Code Cong. & Admin.News 1978, p. 5787, 6088.

It is difficult to build equity in household goods and furniture because they depreciate so rapidly. Therefore, making equity a prerequisite to the § 522(f) avoidance power diminishes the intended effect of § 522(f).

Therefore, this Court finds that the $3,034.00 lien impaired an exemption to which the defendant-debtors would have been entitled. Under § 522(f), the debtors can avoid the lien to the extent it impairs such exemption. Thus, this Court must determine the dollar amount of the exemption to determine how much of the lien is avoidable.

Section 522(*l*) states in pertinent part, as follows:

"*The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section . . . . Unless a party in interest objects, The property claimed as exempt on such list is exempt.*"

Local Rule 4004 states in pertinent part as follows:

"*Any party in interest may file a written objection to exemptions claimed by or on behalf of the debtor within 15 days of the conclusion of the first session of the meeting held pursuant to 11 U.S.C. § 341 unless such time be extended by the court for cause shown before the expiration of said 15-day period. Absent a timely filing of such objection the property listed in the filed schedules as exempt is automatically determined exempt under 11 U.S.C. § 522(l).*"

In the instant case, the debtors claimed $2,000.00 in household goods and furniture as exempt property on Schedule B–4 of their petition. The first session of the § 341 meeting was held on June 12, 1980. Plaintiff did not file an objection to the exemptions or an application to extend time to file an objection within the requisite 15 days. Therefore, this Court finds that the debtors have $2,000.00 in exempt household goods and furniture. *Redmond v. Tuttle*, Adv. No. 81–0096 (D.Kan. June 5, 1981).

### III.

The final issue is, given that the debtors can avoid $2,000.00 of the $3,034.00 lien, can the Court now approve a reaffirmation of the $1,034.00 unavoidable and unsecured portion of the lien?

Section 524 of the Bankruptcy Code states in pertinent part as follows:

"*(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—*

*(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;*"

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement.

\* \* \* \* \* \*

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of this kind specified in subsection (c) of this section, then at such hearing the court shall—

\* \* \* \* \* \*

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(4) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor." (emphasis added)

In the instant case, the parties want to reaffirm a consumer debt that is not secured by real property. Section 524(c)(4) requires court approval of such an agreement. The legislative history indicates that the agreement must be approved before the discharge is granted:

" . . . *Every reaffirmation to be enforceable must be approved by the court,* and

any debtor may rescind a reaffirmation for 30 days from the time the reaffirmation becomes enforceable.. If the debtor is an individual the court must advise the debtor of various effects of reaffirmation at a hearing. In addition, to any extent the debt is a consumer debt that is not secured by real property of the debtor *reaffirmation is permitted only if the court approves the reaffirmation agreement, before granting a discharge under section 727, 1141, or 1328* . . ." 124 Cong. Rec. H 11,096 (Sept. 28, 1978); S 17,413 (Oct. 6, 1978) (emphasis added)

Because court approval of such an agreement must precede the entry of a discharge order, Local Rule 4004 allows the court to defer entry of the discharge, for cause, upon application of the debtor.[2]

In the instant case, debtors' discharge hearing was originally scheduled for September 19, 1980. The hearing was continued until November 19, 1980, because the debtors indicated that they wanted to file an application to avoid the $3,034.00 lien. Such an application was filed on November 4, 1980. Debtors' discharge was granted on November 19, 1980. Debtors did not seek approval of the reaffirmation of any part of that $3,034.00 debt before the court granted discharge. It is too late to seek approval now. Therefore, this Court will not consider any application for approval of reaffirmation agreement.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

**2.** Interim Rule 4002 allows for deferred entry because

" . . . Section 524(c) of the Code authorizes the debtor to enter into binding reaffirmation agreements prior to the entry of a discharge. Immediate entry of the discharge order after the time fixed for filing of a complaint object-

ing to discharge will inhibit the debtor's right to enter into reaffirmation agreements . . . . For the foregoing reasons, immediate entry of a discharge order is inconsistent with § 524(c)." Advisory Committee's Note on Interim Rule 4002.