**In re Henry Buck KENDRICK, Debtor.**

**Henry Buck KENDRICK, Plaintiff,**

v.

**FIRST NATIONAL BANK OF GAINESVILLE, Defendant.**

**Bankruptcy No. 82–00319G.
Adv. No. 85–0001G.**

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

June 11, 1987.

Brooks S. Franklin, Atlanta, Ga., for debtor-plaintiff.

Allen Broxton, Gainesville, Ga., for defendant.

STACEY W. COTTON, Bankruptcy Judge.

### ORDER

Presently before the court is plaintiff-debtor's complaint filed January 7, 1985, which alleges a violation of the injunctive provisions of debtor's discharge under 11 U.S.C. Section 524 and a willful violation of the automatic stay of Section 362. Defendant First National Bank of Gainesville ("Bank") filed a counterclaim on grounds of libel and slander. On August 27, 1986, a hearing on this matter was held before the undersigned during which the court, in accordance with Bankruptcy Rule 7052, made findings of fact and conclusions of law as follows:

On October 29, 1982 debtor filed a voluntary Chapter 7 petition and scheduled the

Bank as a creditor with regard to several unsecured debts and a debt of $7,000.00 secured by a 1979 Cadillac. The Bank received actual notice of this debtor's bankruptcy case. A discharge hearing was held January 28, 1983 and Bankruptcy Judge William L. Norton, Jr. instructed debtor on the effects of his discharge and admonished debtor not to sign any new notes or documents to reaffirm debts, in accordance with Section 524(d) of the Bankruptcy Code. On February 4, 1983 debtor voluntarily executed a new note to the Bank which evidenced an agreement to pay obligations to the Bank which were dischargeable in debtor's Chapter 7 case. Debtor thereafter received his discharge under Chapter 7 on February 21, 1983.

The court finds that, at all relevant times hereto, Mr. Larry Nix represented the Bank with respect to debtor's bankruptcy case and continues to be an employee and agent of the Bank. The Bank and Mr. Nix are sophisticated and experienced in handling creditor claims in bankruptcy cases. Mr. Nix has attended numerous Section 341 creditor meetings, discharge hearings and other activities relating to bankruptcy cases. *See* Transcript of August 27, 1986, pages 10–11 (Testimony of Larry Nix). He admitted that he has a general familiarity and working knowledge of the Bank's rights as they relate to the collection of accounts in bankruptcy. Mr. Nix attended the Section 341 meeting in this debtor's case as well as the discharge hearing. Transcript, page 15. He knew at the time of the discharge hearing, at the time the debtor executed the new notes, and at the time the discharge was granted, that to be valid and enforceable, reaffirmation of any obligations to the Bank by this debtor required bankruptcy court approval prior to discharge. Transcript, page 12. At all relevant times, both Mr. Nix and the Bank knew that this court had never approved any reaffirmation agreement of this debtor with the Bank prior to debtor's discharge. Transcript, pages 23–24.

The court further finds that on February 4, 1983, debtor executed a new note to the Bank that had been prepared and submitted to him by Ms. Margaret Floyd on the Bank's behalf. *See* Plaintiff's Exhibit 3. After signing the note dated February 4, 1983, debtor read the information contained therein regarding the amounts of the debt and in fact registered an objection as to the amount because the unsecured debt had been included. Transcript, pages 27–28. This note was a reaffirmation agreement within the provisions of Section 524(d) of the Bankruptcy Code. It was obtained by the Bank for repayment of the obligations of this debtor which were dischargeable in the debtor's Chapter 7 case. The note combined the unsecured debt listed on Schedule A–3 of debtor's bankruptcy petition and the debt on the 1979 Cadillac for a total of $14,071.58 as follows:

| Nature of Debt | Amount Reaffirmed |
|---|---|
| Billing Service Account | $ 135.38 |
| VISA Account | 2,852.42 |
| Personal Line of Credit | 2,984.46 |
| Unsecured Personal Loan | 1,099.32 |
| 1979 Cadillac (secured note) | 7,000.00 |
| Total Amount of Note | $14,071.58 |
| Personal Guaranty on Car for Wife | unknown |
| Personal Guaranty on Car for Son | unknown |

*See* Plaintiff's Exhibit 3, Transcript, pages 53–54 (Nix); page 36 (Henry Kendrick). This note also contained language by which the Cadillac secured payment of that note or any existing indebtedness or that may thereafter arise.

The evidence also shows that debtor paid $1,539.00 in interest on February 4, 1983, of which $607.11 was paid as six months' interest on the reaffirmed debts in the note. Plaintiff's Exhibit 3; Transcript, pages 26–27, 33 (Kendrick); page 52 (Nix); page 61 (Floyd). The balance of this interest payment appears to have been paid on the automobile notes for the wife and son but the source of this money is unclear. The court finds that although debtor agreed to guarantee the automobile notes of his wife and son he testified that the wife paid her note off and the son paid his note. Transcript, page 37, lines 16–22. The court further finds that no evidence was presented to support, nor any claim made, for any sums paid by debtor with regard to the automobile notes of his wife and son.

After execution of the February 4th note and debtor's objection, Mr. Nix indicated to the debtor that the unsecured portion of his indebtedness would be separated from the secured portion of the note at the time of its renewal in August of 1983. Transcript, pages 19–22 (Nix); pages 28–29 (Kendrick). Upon renewal, the secured and unsecured obligations were split into separate notes dated August 4, 1983. *See* Defendant's Exhibit 2.

At trial the debtor testified that he executed the unsecured promissory note on August 4, 1983 with the understanding that he would not be required to pay that debt. Transcript, pages 28–29, 34, 41–42 (Kendrick). Debtor stated that he only had a fifth grade education and understood the note simply to evidence the obligation for the Bank's records if he later voluntarily elected to pay it. Transcript, page 25. He further stated that he had intended only to guarantee payment on the three cars. Transcript, pages 36–38. The court finds this testimony to be credible. The Bank appears to have misled the debtor. Even if the Bank did not mislead the debtor, however, the Bank did not obtain the required court approval of debtor's reaffirmation of his indebtedness to the Bank.

Debtor renewed the note secured by the Cadillac on January 30, 1984 and paid off this obligation in August of 1984. *See* Defendant's Exhibits 3, 4; Transcript, pages 20–21, 37–38 (Kendrick). When he failed to pay the August 4, 1983 unsecured note, the Bank commenced efforts to enforce collection of the indebtedness evidenced by that note. The Bank instituted a civil collection suit in Hall County State Court on November 8, 1984, seeking a judgment against debtor on the August 4, 1983 note for the unsecured debt. Transcript, page 21 (Testimony of Larry Nix). The court finds that the Bank took these notes and pursued collection of the unsecured debt listed on Schedule A–3 of debtor's bankruptcy petition. These actions were undertaken notwithstanding its knowledge of the reaffirmation requirements of the Bankruptcy Code and that no reaffirmation agreement had been approved by the court. As a result of their enforcement actions, debtor was forced to seek legal counsel to defend himself.

The court further finds that the evidence in this case does not show or sustain any right of recovery on grounds of libel or slander as alleged in the Bank's counterclaim.

## CONCLUSIONS OF LAW

Since this case was filed before the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, which added 11 U.S.C. Section 524(f), the applicable law is that of the Bankruptcy Reform Act of 1978. *See In re Carey,* 51 B.R. 294 (Bankr.D.D.C.1985); Pub.L. No. 98–353, Section 553(a), 1984 U.S.Code Cong. & Ad.News (98 Stat.) 333, 392. Pursuant to Section 524(c), reaffirmation of a consumer debt not secured by real property requires court approval to be enforceable. *Butler Consumer Discount Co. v. Cain,* 50 B.R. 388, 389 (W.D.Pa.1985); *In re Malagesi,* 39 B.R. 629, 631 (E.D.Pa.1984); *In re Long,* 22 B.R. 152, 153 (Bankr.D.Me. 1982); *G.F.C. Corporation of Kansas v. Noland (In re Noland),* 13 B.R. 766, 772 (Bankr.D.Kan.1981). This court review is intended to prevent creditors from using their superior economic ability to coerce debtors into reaffirming obligations that are otherwise discharged. *Malagesi,* 39 B.R. at 631; *Long,* 22 B.R. at 153 n. 2; *In re Farmer,* 13 B.R. 319, 320 (Bankr.M.D. Fla.1981).

The importance of court approval of any reaffirmation of dischargable debt by a debtor is underscored by the fact that Congress intended to prohibit reaffirmations with only limited exceptions. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 162–64 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6123–25. *See also In re Roth,* 38 B.R. 531, 535 (Bankr.N.D. Ill.), *aff'd,* 43 B.R. 484 (N.D.Ill.1984). In this House Report it is stated that without the prohibition of reaffirmations

unsuspecting debtors are led into binding reaffirmations, and the beneficial effects of a bankruptcy discharge are undone . . .

The unequal bargaining position of debtors [after bankruptcy] and creditors ... lead to reaffirmations too frequently. To the extent that reaffirmations are enforceable, the fresh start goal of the bankruptcy laws is impaired.

*Id.* at 163, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6124. The statute permits a reaffirmation subject to the strict requirement that the agreement "must be entered into in good faith and must be approved by the court." *Id.* at 366, *reprinted in* 1978 U.S.Code Cong. & Ad. News 6322.

The agreements and debtor's circumstances in this case, however, were never subjected to the required court scrutiny. In considering approval of reaffirmation agreements, it has been the practice of this court to inquire into and consider the financial circumstances and ability of the debtor to pay, the circumstances surrounding reaffirmation, possible hardship upon debtor or a dependent, the best interests of debtor, and the good faith of both parties. Approval of reaffirmations is not a matter that is taken lightly by this court and on numerous occasions the court has refused to approve reaffirmations of debt.

The court further notes, however, that with regard to the secured debt, if no other evidence were presented, the court might have approved such a reaffirmation agreement, but not for sums in excess of the value of the collateral. Had such a reaffirmation agreement of the unsecured debt been presented to this court for approval, it likely would not have been approved. The imposition of the continuing burdens of such unsecured debts for which there is no benefit or purpose for the debtor or the debtor's dependents and which would have possibly impaired and been a hardship to the debtor and his ability to pay, do not meet the requirements of the Code for such approval.

The Bank presented a defense that debtor voluntarily executed the documents at issue. The Bank, however, acted with knowledge that it could not obtain a valid, enforceable reaffirmation of this debt in the absence of court approval. Whether the acts of plaintiff-debtor were voluntary is not the issue. To permit such a reaffirmation would be tantamount to holding that the required court approval is unnecessary if a creditor can obtain a debtor's signature on a reaffirmation agreement. *In re Gilliland,* 62 B.R. 587, 590 (Bankr.D. Neb.1986). That conclusion would mean that issues of undue hardship on a debtor or a dependent, best interests of a debtor, and good faith are meaningless. Such a determination would be contrary to the intent of Congress that the bankruptcy court make an independent examination of these issues in approving the reaffirmation of debt.

Pursuant to the order of discharge entered by the court on February 21, 1983, this debtor was released from all dischargeable debts, whether secured or unsecured. The debtor's discharge specifically provided that all creditors whose debts were discharged were:

enjoined from commencing, continuing or employing any action, process or act to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived.

This included all of this debtor's liabilities to the Bank.

Because it held a valid lien on the debtor's 1979 Cadillac automobile which was not avoided, the Bank retained its rights to recover and liquidate its collateral. Yet, it chose instead to obtain a reaffirmation of all of its debts by this debtor. Had the Bank obtained execution of a reaffirmation agreement and approval by the court, enforcement of the new notes would have been proper.

The court concludes that all indebtedness of this debtor to the Bank, both secured and unsecured, was discharged in debtor's Chapter 7 case. The Bank knowingly violated Section 524(c) and the injunctive provisions of debtor's discharge under Section 524(a)(3) in obtaining debtor's reaffirmation of the Bank's indebtedness without presentation of its terms to the court prior to discharge, and in its subsequent actions to collect these debts. The defendant First

National Bank of Gainesville should be permanently enjoined from further violating the provisions of the Bankruptcy Code, from the commencement or continuation of an action, or the employment of process or an act to collect, recover or offset any of the discharged obligations of this debtor.

■ The court concludes that no violation of the automatic stay occurred under Section 362 because that stay operates in a Chapter 7 case pursuant to Section 362(c)(2)(C) only until a discharge has been granted. Under the facts in this case, the Section 362 stay had been terminated by the debtor's discharge.

■ With regard to the secured debt, the court finds that the Bank held a valid security interest in the debtor's 1979 Cadillac automobile. At the time of discharge and reaffirmation the 1979 Cadillac had a fair market value of $6,000. Transcript, pages 16, 19 (Testimony of Larry Nix). Upon further consideration of this matter following the trial, the court concludes that had the debtor surrendered the automobile, the Bank would have presumably recovered its value of $6,000. Thus the Bank was entitled to surrender of the vehicle or payment of its value. Debtor has retained possession and the benefits of the vehicle and never returned or tendered return of the vehicle. It would be inequitable to permit debtor to retain the benefits of the continued possession and use of the vehicle. On the other hand the Bank should not be allowed to profit from its actions by charging and receiving interest or other charges for the value of the vehicle. To permit the charging of interest or other charges would permit the Bank to profit by its wrongful acts. Based on its violation of the Bankruptcy Code, and notwithstanding the fact that debtor paid the value of the vehicle over time, the Bank's recovery is limited to the $6,000 value of the vehicle because of its wrongful acts.

■ Although debtor agreed to reaffirm his personal guaranty of those loans secured by his wife and son's automobiles, the evidence does not show that the Bank ever called on debtor with respect to these obligations. While reaffirmation of this guaranty constituted a technical violation of the provisions of debtor's discharge, the court concludes that any damage suffered was inconsequential and debtor is entitled to no relief thereby.

Based upon the foregoing findings of fact and conclusions of law, it is hereby

ORDERED that judgment is GRANTED to plaintiff-debtor for defendant Bank's willful violation of 11 U.S.C. Section 524(c) and the injunction of debtor's discharge; and it is

FURTHER ORDERED that defendant Bank is permanently enjoined from violating further the provisions of the Bankruptcy Code and the injunction of the debtor's discharge, and from the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset any such debts as a personal liability of the debtor or property of the debtor; and it is

FURTHER ORDERED that the Bank may retain the amount of $6,000 as equivalent value of the 1979 Cadillac automobile. Any amounts paid in excess of $6,000 must be repaid to the debtor by the Bank; and it is

FURTHER ORDERED that with regard to debtor's reaffirmation of his guaranty of those obligations secured by automobiles of his wife and son, debtor is entitled to no relief thereby except for the injunctive relief to enforce the provisions of his discharge; and it is

FURTHER ORDERED that the Bank has failed to present sufficient evidence to support its claim of libel and slander or show damage and the court DENIES any relief with regard to the counterclaim; and finally it is

FURTHER ORDERED that the debtor is awarded damages in the sum of $3,000, actual costs and expenses of this litigation, including $79.10 for deposition costs, and $1,500 attorney's fees.

Judgment will be entered accordingly and contemporaneously herewith.

IT IS SO ORDERED.